**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-3417-NYW-MEH

HOLLY KLUTH,

      Plaintiff,

v.

TONY SPURLOCK,
Individually and in his official capacity as Douglas County Sheriff,

      Defendant.

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

      Defendant Tony Spurlock, by and through counsel, and pursuant to Fed.R.Civ.P. 56, hereby moves for summary judgment on Plaintiff's Complaint and Jury Demand [Doc. No. 1] and as grounds therefor states as follows:

## <u>INTRODUCTION</u>

      This action arises out of Plaintiff's demotion from Douglas County Undersheriff to Captain in mid-November 2020 and the subsequent termination of her employment with the Douglas County Sheriff's Office ("DCSO") in late May 2021. Plaintiff's claim that Sheriff Spurlock retaliated against her for her alleged political speech and affiliation/association is not supported by the evidence. Rather, the evidence indisputably demonstrates that Plaintiff was demoted for violating several DCSO policies, which she admitted at the time, and eventually terminated for failing to meet Sheriff Spurlock's vision, mission, and values. Accordingly, Sheriff Spurlock is

entitled to qualified immunity on Plaintiff's constitutional claims. Plaintiff's state law claims and request for punitive damages also fail for the reasons described below.

## STATEMENT OF UNDISPUTED MATERIAL FACTS ("SOMF")

For purposes of this Motion only, the following facts are undisputed:

*Background and Parties*

1.     Plaintiff was the Douglas County Undersheriff for over six years, until she was demoted to Captain of the Patrol Division in November 2020. (**Ex. A**, Kluth Dep. at 107:18-21).

2.     Sheriff Spurlock terminated Plaintiff's employment with DCSO at the end of an in-person meeting with Plaintiff on May 25, 2021. (**Ex. A**, Kluth Dep. at 164:22-168:17).

3.     Plaintiff was an at-will employee with DCSO and did not have a contract for employment. (**Ex. A**, Kluth Dep. at 204:7-10).

*Sheriff's Vision, Mission, and Values*

4.     Sheriff Spurlock's vision, mission, and values for the DCSO are set forth in writing. (**Ex. B**, KLUTH 1).

5.     At the time of Plaintiff's employment with DCSO, she was familiar with Sheriff Spurlock's vision, mission, and values. (**Ex. A**, Kluth Dep. at 168:15-17, 169:4-14).

6.     Plaintiff agrees that all command staff members, including Captains, should be in agreement with the Sheriff's vision, mission, and values. (**Ex. A**, Kluth Dep. at 49:6-17).

*September 2020 Incident & Plaintiff's Demotion*

7.     In September 2020, Sheriff Spurlock—a Republican—publicly pledged support for a Democrat for Douglas County Commissioner. (**Ex. C**, Spurlock Dep. at 57:3-8; **Ex. D**, DCSO 60-74 at 72 – Johnson Report, Summary section, bullet ¶ 3).

8. In response to that endorsement, Stu Parker of the Douglas County GOP contacted DCSO command staff, including Plaintiff and her subordinates at DCSO, to prepare statements declaring their support for Douglas County GOP candidates. (**Ex. D**, DCSO 60-74 at 72-73 – Johnson Report).

9. At that time, Plaintiff was Sheriff Spurlock's Undersheriff—his "right-hand" person and the second in command at DCSO, and was supposed to be in sync with him on matters related to DCSO. (**Ex. A**, Kluth Dep. at 9:23-10:7).

10. Plaintiff engaged in communications with DCGOP personnel as well as her DCSO subordinate—then-Chief Tim Moore—to facilitate Mr. Parker's request. (**Ex. D**, DCSO 60-74 at 73 – Johnson Report; **Ex. A**, Kluth Dep. at 42:5-45:5; **Ex. E**, DCSO 42-43 – text messages).

11. At that time, Sheriff Spurlock was not aware of such communications. (**Ex. A**, Kluth Dep. at 61:8-11).

12. Although Plaintiff was Mr. Moore's direct supervisor, she did not caution him about doing political business on duty. (**Ex. A**, Kluth Dep. at 19:7-20:3, 32:11-21).

13. Plaintiff was aware Mr. Moore was soliciting members of DCSO command staff, including subordinates, to write statements. (**Ex. D**, DCSO 60-74 at 73 – Johnson Report, bullet ¶ 2).

14. Plaintiff provided a statement to Mr. Parker. (**Ex. D**, DCSO 60-74 at 73 – Johnson Report, bullet ¶¶ 3, 13,14; **Ex. E**, DCSO 41-53 – statement and text messages).

15. Plaintiff also generated a Facebook post that began by referencing Sheriff Spurlock, in response to Sheriff Spurlock's endorsement of a Democrat. (**Ex. F**, KLUTH 1419; **Ex. A**, Kluth Dep. 24:20-25, 33:2-5).

16.     As a result of Plaintiff's and Mr. Moore's conduct, an internal affairs investigation was initiated in late September/early October 2020 ("20IA-025"). (**Ex. G**, DCSO 163-67 – Notification of Findings 20IA-025).

17.     An outside investigator, Lynn Johnson (who neither was, nor is, an employee of DCSO) conducted the investigation. (**Ex. A**, Kluth Dep. at 7:23-8:2; **Ex. C**, Spurlock Dep. at 176:25-177:3-8).

18.     During Plaintiff's in-person interview with Mr. Johnson, she admitted that:

   a.  she understood that her conduct could be perceived as "contrary to the Sheriff" and a "split" in the command staff;

   b.  she is his "right-hand person and supposed to be in-sync with him";

   c.  when Sheriff Spurlock explained to her that her conduct "would make people think there's a rift in the department internally," she realized that was "not good," and so she "understood that" and it "ma[de] sense" because "it's not just what other people know about [her] on the outside, it's also what the employees think." (**Ex. H**, DCSO 245 – Video Recording of Kluth-Johnson Interview at 22:36-23:40[1]; **Ex. G**, DCSO 163-67 at 166, Notification of Findings 20IA-025).

19.     Mr. Johnson prepared a report of his investigation. (**Ex. D**, DCSO 60-74 – Johnson Report; **Ex. A**, Kluth Dep. at 16:20-17:25, 18:21-20:24, 94:7-95:15).

20.     At the conclusion of the investigation in 20IA-025, it was determined that Plaintiff violated the following DCSO policies:

   a.  P&P C-101(II)(EE) Participating in Election Campaigns
   b.  P&P C-101(II)(U) On-and-Off Duty Conduct
   c.  P&P C-101(II)(CC) Exercising Discretion
   d.  P&P C-100(XV) Responsibility for Conduct
   e.  P&P B-127(III) Internet Social Networking and Personal Websites; and
   f.  P&P Law Enforcement Code of Ethics. (**Ex. G**, DCSO 163-67 at 163).

---

[1] All video/audio recording pin-cites referenced in this Motion are to the time-stamp on the respective video/audio player.

21.     Plaintiff had a pre-disciplinary hearing with Sheriff Spurlock regarding 20IA-025 on November 12, 2020. (**Ex. A**, Kluth Dep. at 8:7-11)

22.     At the pre-disciplinary hearing on November 12, 2020, Plaintiff told Sheriff Spurlock:

> a.   "I never realized that the Facebook post was what you said it was, to show a division between us, until I talked to you, and then I felt like, 'ok, I see that now.'" (**Ex. I**, DCSO 251 - Audio Recording of Nov. 12, 2020 hearing at 10:00-10:20).

> b.   "People have to see you and your undersheriff as being united, whether or not you agree on the same political things or legislative candidates. I agree. They have to think of me or whoever your undersheriff is as being right alongside of you, not necessarily agreeing but alongside you and supporting you or staying out of it. So I understand that." (*Id*. at 11:30-12:01).

23.     Plaintiff had a disciplinary hearing with Sheriff Spurlock regarding 20IA-025 on November 16, 2020. (**Ex. A**, Kluth Dep. at 9:5-8).

24.     All statements that Plaintiff provided to Sheriff Spurlock during the November 16, 2020 meeting were true. (**Ex. A**, Kluth Dep. at 9:9-12).

25.     At the disciplinary hearing on November 16, 2020, Sheriff Spurlock told Plaintiff, in reference to the September 2020 incident: "you should have put a stop to it the second you knew anything about it."  In response, Plaintiff stated, "I realize that now, yeah." (**Ex. J**, DCSO 248 – Audio Recording of Nov. 16, 2020 hearing at 4:44-54).

26.     In a memorandum dated November 16, 2020 concerning 20IA-025, addressed to Sheriff Spurlock, Plaintiff stated, "First of all, I take full responsibility for my actions and inactions in this situation. I apologize for betraying your trust and allowing this to occur…." (**Ex. K**, DCSO 147-48 at 147 – Kluth Memo Nov. 16, 2020; **Ex. A**, Kluth Dep. at 32:11-33:5).

27.     Plaintiff admitted to violating all of the policies identified in the Notification of Findings for 20IA-025 (**Ex. G**, DCSO 163-67) except the Law Enforcement Code of Ethics. (**Ex. L**, DCSO 149-50 – Kluth Memo Nov. 17, 2020).

28.     In her memo dated November 17, 2020 concerning her discipline for 20IA-025, addressed to Sheriff Spurlock, Plaintiff stated the following:

> a. "I <u>do not</u> intend to appeal the discipline. Again, I accept full responsibility for what I did and accept the outcome." (**Ex. L**, DCSO 149)
>
> b. "I fully admit to all the info in the Evidence Supporting section of the Notice of Findings and admit to the other 5 Policy Violations, as and I will accept my discipline as stated and proposed by you." (*Id*. at DCSO 150).

29.     Plaintiff agrees that there was "an appearance of rift" between her (as the Undersheriff) and Sheriff Spurlock based on what she did during the September 2020 incident. (**Ex. A**, Kluth Dep. 21:2-22:6, 40:12-22, 41:9-13).

30.     As a result of the policy violations sustained in 20IA-025, Plaintiff was demoted from Undersheriff to Captain in November 2020. (**Ex. M**, DCSO 145-46 at 146 – Spurlock Memo dated Nov. 16, 2020).

***Plaintiff's conduct after her demotion***

31.     Following her demotion from Undersheriff to Captain, Plaintiff exhibited behavior that was contrary to Sheriff Spurlock's vision, mission, and values. (*See* **Ex. N**, Def.'s Resps. to Pl.'s First Set of Interrogs. at 2-6, Resp. to Interrog. No. 2; **Ex. C**, Spurlock Dep. at 236:3-237:25).

> a. As a Captain, Plaintiff objected to and complained about the on-call command structure established by Chief Duffy (her superior and direct supervisor) and the fact that she was not exempt from the on-call requirement, which generally applied to all Captains. (*See* **Ex. N**, Def.'s Resp. to Interrog. No. 2 at 3-4; **Ex. C**, Spurlock Dep. at 238:17-239:20; **Ex. O**, DCSO 2374-79 at 2374 – Chief Duffy memo, noting "Capt. Nicholson-Kluth asked to make immediate changes in the structure of the

division" including "[c]hanging the On-Call command structure for Command and questioning if she would have to be on-call as the captains were.").

b.  Plaintiff alleged that Chief Duffy lacked authority to meet with Lieutenants outside of her presence and accused him of acting disrespectfully in soliciting information or ideas from her subordinates outside of her presence. (**Ex. N**, Def.'s Resp. to Interrog. No. 2 at 4; **Ex. C**, Spurlock Dep. at 243:12-21, 244:15-245:16, 247:1-8; **Ex. P**, DCSO 951-52 – Duffy's entry in Plaintiff's Guardian-Tracker file noting "Conduct/Demeanor" issue; **Ex. O**, DCSO 2374-79 at 2377-78 – Chief Duffy memo; **Ex. Q**, Duffy Dep. at 123:9-127:14; **Ex. R**, DCSO 2507-09 - emails).

c.  Plaintiff aggressively insisted on a particular schedule for Captains and argued that she should be reclassified as an "essential employee" so that she could receive overtime compensation. (**Ex. N**, Def.'s Resp. to Interrog. No. 2 at 4; **Ex. O**, DCSO 2374-79 – Duffy memo at 2374, noting "Capt. Nicholson-Kluth asked to make immediate changes in the structure of the division" including "[w]anting the two Captains on Patrol to be moved to a 4/10 schedule… and asked that the captains be reclassified as "essential" so they could be paid overtime.").

d.  Plaintiff, using her DCSO Twitter account, engaged in a "Twitter war" with a colleague, Captain Jensen, violating DCSO's policy prohibiting activities that bring discredit to DCSO, exhibiting her inability to exercise reasonable judgment, and calling her professional integrity and judgment into question. (**Ex. N**, Def.'s Resp. to Interrog. No. 2 at 4; **Ex. C**, Spurlock Dep. at 248:21-249:8; **Ex. O**, DCSO 2374-79 – Duffy memo at 2374, noting "On November 30, 2022, I met with Sheriff, Undersheriff [Walcher] and Chief Johnson to discuss the restructuring of the office. At this meeting, the Undersheriff pointed out his concerns on the various "tweets" that have been going out o the office. He noted that, '*Capt.'s Jensen & Nicholson-Kluth have been doing a lot of tweeting the past week – it seems like a <u>twitter war,</u> trying to one up each other.*'"

e.  Plaintiff instigated continuous conflicts with Captain Jensen, criticizing his management style in an adversarial nature, which resulted in tension and disruption within the Patrol division and hindered its operations. (**Ex. N**, Def.'s Resp. to Interrog. No. 2 at 4; **Ex. C**, Spurlock Dep. at 252:22-253:4; **Ex. Q**, Duffy Dep. at 143:10-144:10, 146:8-15; **Ex. O**, DCSO 2374-79 – Duffy memo at 2375, ¶¶ 3, 5).

f.  Plaintiff failed to properly perform her duties as Captain when reviewing and approving deputy pursuits, despite specific instruction from her supervisor, Chief Duffy, regarding the same. (**Ex. N**, Def.'s Resp. to Interrog. No. 2 at 5; **Ex. Q**, Duffy Dep. at 151:18-154:1; **Ex. O**, DCSO 2374-79 – Duffy memo at 2376, ¶¶ 1, 2 and 2379).

g.  Plaintiff was inconsistent in supervising deputies and failed to properly advise and instruct them. (**Ex. O**, DCSO 2374-79 – Duffy memo at 2376, ¶ 4 and 2379).

Plaintiff demonstrated divisive behavior and a lack of leadership as Captain. She made excuses for her subordinates who violated policy but was hypercritical of deputies who were not under her direct chain of command. Her behavior exhibited poor professional judgment and generated lack of trust. (**Ex. N**, Def.'s Resp. to Interrog. No. 2 at 5; **Ex. O**, DCSO 2374-79 – Duffy memo at 2379).

***Termination of Plaintiff's Employment***

32.     On May 25, 2021, Plaintiff had an in-person meeting with Sheriff Spurlock. County HR Director Laura Leary and DCSO Captain of Professional Standards Jason Kennedy were also present. (**Ex. A**, Kluth Dep. at 164:22-165:3; **Ex. C**, Spurlock Dep. at 203:4-204:4).

33.     At the meeting, Sheriff Spurlock informed Plaintiff that she was not meeting his vision, mission, and values and that "nothing had changed since the fall"—meaning that her behavior had not improved. (**Ex. A**, Kluth Dep. at 165:8-168:17; **Ex. C**, Spurlock Dep. at 203:4-204:4, 210:6-20; 213:16-214:9).

34.     At that meeting, Sheriff Spurlock offered Plaintiff a severance agreement and the opportunity to resign, which Plaintiff declined. (*Id.*)

35.     Plaintiff's employment with DCSO was terminated on May 25, 2021. (*Id.*)

## STANDARD OF REVIEW

Summary judgment shall be granted if "the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## ARGUMENT

**I.     SHERIFF SPURLOCK IS ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S CONSTITUTIONAL CLAIMS**

Qualified immunity is a long-established doctrine that "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)

(quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Once an individual defendant asserts

qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions

violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly

established at the time of the defendant's unlawful conduct." *Knopf v. Williams*, 884 F.3d 939,

943-44 (10th Cir. 2018). "This is a heavy burden" and "if the plaintiff fails to satisfy either part of

the inquiry, the court must grant qualified immunity." *Id.*

### A. Sheriff Spurlock is entitled to summary judgment on Plaintiff's First Amendment Retaliation claim (Claim 1).

Plaintiff's First Amendment claim is based on her allegations that Sheriff Spurlock

demoted her for her political affiliation and communication with DCGOP officials regarding the

election for Douglas County Commissioner and posting on Facebook regarding the same. (*See*

ECF No. 1, Compl. ¶ 165). She also alleges that Sheriff Spurlock "interfered with [her] protected

First Amendment freedoms of political association and speech, including by intentionally making

her working conditions difficult, demoting or transferring her to Captain of Detentions, and

ultimately terminating her employment." (*Id.* ¶ 166). Plaintiff's free speech/association claim fails

for the reasons described below.

#### 1. Free Speech theory

When a plaintiff asserts a free speech claim based on alleged retaliation by the government

as an employer, courts apply the *Garcetti/Pickering* test. *Hedquist v. Beamer*, 763 F. App'x 705,

711 (10th Cir. 2019) (citing *Leverington v. City of Colorado Springs*, 643 F.3d 719, 724 (10th Cir.

2011)); *see also Garcetti v. Ceballos*, 547 U.S. 410 (2006).[2] The *Garcetti/Pickering* test consists

of the following five-step inquiry:

1. First: whether the employee speaks "pursuant to [her] official duties." If she does, then the inquiry ends because there is no constitutional protection.

2. Second: "whether the subject of the speech is a matter of public concern." If it is not, then it is unprotected and her claim fails.

3. Third: if the speech is a matter of public concern, then the court must decide "whether the employee's interest in commenting on the issue outweighs the interest of the state as employer." If this balance of interests favors the employer, then her claim fails.

4. Fourth: if the balance of interests favors the employee, then she must show that her speech was a "substantial factor or a motivating factor in a detrimental employment decision."

5. Lastly, if the employee makes this showing, then the employer must establish that it would have taken the same action even if the speech had not occurred.

*Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713-14 (10th Cir. 2010) (citing

*Brammer-Hoelter*, 492 F.3d 1192, 1202-03 (10th Cir. 2007)). The first three inquiries are resolved

by the court as a matter of law. *Id.* (citing *Hesse v. Town of Jackson*, 541 F.3d 1240, 1249 (10th

Cir. 2008)). Plaintiff's retaliation claim fails under the second, third, and fourth steps.[3]

   a. <u>Public Concern</u>

---

[2] Plaintiff's allegation that "Defendant's conduct caused [her] to suffer injuries that would chill a person of ordinary firmness from engaging in such constitutionally protected activity" is misplaced. (Compl. ¶ 168). Whether "a defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity" is a factor to be considered under the *Worrell* test, which "is an alternative test to be used in free-speech retaliation claims ***against a defendant who is not the plaintiff's employer ….***" *Hedquist*, 763 F. App'x at 712 (emphasis added) (citing *Leverington*, 643 F.3d at 729 (10th Cir. 2011) and *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)). The *Garcetti/Pickering* test, not the *Worrell* test, applies here where Plaintiff alleges her claims based on an employment relationship.

[3] Even if Plaintiff could withstand summary judgment on each of these steps, her claim still fails under the fifth step.

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement…." *Singh v. Cordle*, 936 F.3d 1022, 1035 (10th Cir. 2019) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)). This includes evaluation of "the motive of the speaker" and whether the speech is specifically calculated to address a matter of public concern "or merely deals with personal disputes and grievances unrelated to the public's interest." *Id*. (citing *Brammer-Hoelter*, 492 F.3d at 1206). "It is not enough, however, that the public interest was **part** of the employee's motivation"; "the employee's **primary** purpose [must have been] to raise a matter of public concern." *Id*. (emphasis added; partly italicized in original).

Speech is not of public concern merely because the subject matter is one that "might be [of] general interest" or that it "relates generally to a subject matter of public importance." *Leverington*, 643 F.3d at 727 (citations omitted). "[R]ather, what is actually said on the topic is the crux of the public concern content inquiry." *Id*. "Speech is not a matter of public concern if the plaintiff's principal motive is to serve her own personal interests." *Joritz v. Gray-Little*, 822 F. App'x 731, 741 (10th Cir. 2020) (citing *Singh*, 936 F.3d at 1035-36). Speech motivated by a plaintiff's concern for her reputation, including speech tailored to achieve reputational goals, supports a determination that the speech addressed personal and individual concerns, rather than a public concern. *Cf. Arndt v. Koby*, 309 F.3d 1247, 1254-55 (10th Cir. 2002) ("the fact that [plaintiff] was motivated to salvage her personal reputation, and that her proposed speech was tailored to achieve that goal, supports our assessment that her proposed speech addressed purely personal and individual concerns."). "[A defendant] is entitled to qualified immunity if a reasonable [official] could have believed that Plaintiff was motivated primarily by personal

[concern]." *Singh*, 936 F.3d at 1036. "This belief may have been wrong, but so long as the error was reasonable, [the defendant] is immune." *Id*.

Plaintiff's speech, specifically communications to Stu Parker of the DCGOP and her DCSO subordinate Chief Tim Moore and her Facebook post, was reasonably perceived by Sheriff Spurlock as being primarily motivated by her personal interests and concerns rather than a public concern. (*See* **Ex. E**, DCSO 42-53 text messages; **Ex. F**, KLUTH 1419 – Facebook post). The communications concerned preparation of statements from Plaintiff and other DCSO command staff ***in response to*** Sheriff Spurlock's endorsement of a Democrat for County Commissioner. (SOMF ¶¶ 7, 8, 16-15). Plaintiff later informed Sheriff Spurlock that after the DCGOP obtained statements from DCSO command staff, they planned to get photos of the DCSO command staff off the internet and post the pictures with their statements in support of the DCGOP and Republican candidates. (*See* **Ex. G**, DCSO 163-67 at 165, ¶ 1 – Notification of Findings in 20IA-025). The statements were intended to demonstrate to voters that not all command staff at DCSO were in support of the Democratic candidate Sheriff Spurlock had publicly endorsed. (*Id. ¶* 2).

Although the incident giving rise to these policy violations related, in a general sense, to Douglas County Commissioner elections, the specific speech at issue was principally motivated by Plaintiff's concerns and interest in salvaging her personal reputation with the DCGOP in light of Sheriff's Spurlock's endorsement of a Democrat for County Commissioner. (*See* **Ex. C**, Spurlock Dep. at 164:11-15: Plaintiff's intent in making the statement was to "satisfy the Republicans pressuring her to step up"; *see also* **Ex. M**, DCSO 145-46 at 145 – Spurlock Memo Nov. 16, 2020: "As Undersheriff, the 2nd in command at the [DCSO], you prepared and delivered a written statement to the executive board of the DCGOP for the purposes of … publicly

discrediting me as the Sheriff to gain personal political favor from the DCGOP."). In sum, Sheriff Spurlock is entitled to qualified immunity since his belief that Plaintiff's speech was primarily motivated by her personal interests was reasonable under the circumstances. *See Singh*, 936 F.3d at 1036. Accordingly, Plaintiff's claim fails at the second step of the *Garcetti/Pickering* test.

     b.  <u>Balance of Interests</u>

In balancing the parties' interests under the third step of *Garcetti/Pickering*, courts consider whether the employee's speech: (1) "impairs discipline by superiors or harmony among co-workers"; (2) "has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary"; or (3) "impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Belcher v. City of McAlester*, 324 F.3d 1203, 1208 (10th Cir. 2003) (citations omitted). The speech must "not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Id*.

"[T]he government needs to maintain discipline by superiors and harmony among co-workers, especially where close working relationships exist for which personal loyalty and confidence are necessary." *Moore v. City of Wynnewood*, 57 F.3d 924, 934 (10th Cir. 1995) (citing *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)) (internal quotations and brackets omitted). "That need is particularly acute in the context of law enforcement, where there is a heightened interest in maintaining discipline and harmony among employees." *Id*. (citing *Kelley v. Johnson*, 425 U.S. 238, 246-47 (1976) (recognizing the need to accord police departments wide latitude in decisions that impact "discipline, esprit de corps, and uniformity")).

"Most courts that have considered the issue have concluded that the government's interest in regulating the political speech of law enforcement personnel outweighs the individual officer's interest in engaging in certain kinds of political speech." *Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1274 (10th Cir. 1998) (finding interests of the government employer in prohibiting political yard signs outweighed the officers' interest in displaying the yard signs). "Indeed, courts have held that a government employer's power to curtail the political speech of law enforcement personnel extends far enough to ban activities such as attempting to influence voters, endorsing political candidates, and displaying political signs in their yards." *Id.* (citing multiple cases).

Additionally, the likelihood that a plaintiff's speech will impact the department and reasonably threaten close working relations increases when the plaintiff is a high-ranking official and/or in a leadership position. *Moore*, 57 F.3d at 934-35 (finding that plaintiff police-officer's position as the "second in-command" in the department "might have caused his statements to reverberate with special force"); *see also Rock v. Levinski*, 791 F.3d 1215, 1221 (10th Cir. 2015) (holding that speech of employees who serve policymaking or public contact roles are "more restricted") (citing *Joyner v. Lancaster*, 815 F.2d 20, 204 (4th Cir. 1987)).

Plaintiff's high rank at the time of her allegedly protected speech warrants finding in favor of Sheriff Spurlock on the balance of interests. As the Undersheriff, Plaintiff was Sheriff Spurlock's "right-hand" person and the second in command at DCSO. (**Ex. A**, Kluth Dep. at 9:23-10:7). Plaintiff, in that role, had a high public profile in Douglas County and was involved in DCSO policymaking as she would "write some policies or edit them or approve of them up to [her] level." (**Ex. A**, Kluth Dep. at 10:13-24). As Undersheriff, Plaintiff was the face and/or voice of the organization at times, including in the absence of the Sheriff. (**Ex. A**, Kluth Dep. at 10:25-11:18).

The potential for disruption from Plaintiff's speech was significant. To establish that the employee's speech has threatened the employer's interest, the "employer need not show that the employee's speech *in fact* disrupted internal operations and employment relationships." *Helget v. City of Hays*, 844 F.3d 1216, 1222 (10th Cir. 2017) (citing *Trant v. Oklahoma*, 754 F.3d 1158, 1166 (10th Cir. 2014)). "Instead, it need only to establish that the speech could *potentially* become so disruptive to the employer's operations as to outweigh the employee's interest in the speech." *Id.* (quoting *Trant*, 754 F.3d at 1166) (internal quotations and brackets omitted). "The employer need not await the detrimental impact before taking action. Preemptive steps to avoid such an impact can be acceptable, and [the Court] will generally defer to a public employer's reasonable predictions of disruption . . . ." *Rock*, 791 F.3d at 1220 (citation and internal quotation marks omitted); *see also Moore*, 57 F.3d at 934 (holding that a law-enforcement employer "need not have to wait for speech actually to disrupt core operations before taking action"; it only needs to only articulate specific concerns about the plaintiff-employee's conduct).

"The Tenth Circuit has held that an employee's interest in free speech does not outweigh the employer's interest in an efficient workplace when the employee's speech does not disclose any misconduct." *Klaassen v. Atkinson*, 348 F. Supp. 3d 1106, 1176 (D. Kan. 2018) (citing *Helget*, 844 F.3d at 1224). Where the speech at issue does not "expose corruption or other unlawful conduct, or even some secret agenda of the [employer]," and instead, "simply expresse[s] [plaintiff's] opposition" to her superiors, a government employer need not "tolerate such disloyalty from the upper echelons of the administration (even though [the Court] may question the wisdom of the [adverse employment action])." *Rock*, 791 F.3d at 1221. "In such circumstances, the balance of interests favors the government employer." *Id.*

It is undisputed that Plaintiff's speech did not expose corruption, misconduct, or other unlawful conduct or secret agenda. As such, the balance of interests does not favor her. Rather, the balance favors Sheriff Spurlock because it is indisputable that, at a minimum, Plaintiff's speech presented the ***potential*** for disruption within the DCSO because it "created the appearance of a conflict between the Sheriff and Undersheriff." (**Ex. C**, Spurlock Dep. at 163:25-164:10). Plaintiff understood that she owed the Sheriff a duty of loyalty as his Undersheriff. (**Ex. A**, Kluth Dep. at 211:19-21). Plaintiff agrees that there was the appearance of a rift between her and Sheriff Spurlock as a result of what she did during the September 2020 incident. (SOMF ¶¶ 18, 22, 29). She also admits that any appearance of a rift in the office between the Undersheriff and the Sheriff could have been disruptive to the office's operations and that she betrayed Sheriff Spurlock's trust. (**Ex. A**, Kluth Dep. at 10:8-12; **Ex. K**, DCSO 147-48 at 147). In sum, Plaintiff's claim fails at the third step of the *Garcetti/Pickering* test because she cannot establish that the balance of interests favors her.

c. <u>Substantial Motivating Factor</u>

Although the fourth step of the *Garcetti/Pickering* test is "ordinarily a jury question," "summary judgment is appropriate when there simply is no evidence in the record from which a trier of fact could reasonably conclude the protected speech was a motivating factor in the [adverse employment action]." *Cypert v. Indep. Sch. Dist. No. I-050*, 661 F.3d 477, 483-84 (10th Cir. 2011) (citing *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 750 (10th Cir. 2010) and *Maestas v. Segura*, 416 F.3d 1182, 1188-92 (10th Cir. 2005)). At this step, "the employee must show the protected speech *played a substantial part* in the employer's decision to adversely alter the employee's conditions of employment." *Maestas*, 416 F.3d at 1188 (emphasis in original; citations

omitted). "[T]emporal proximity is insufficient, without more, to establish such speech as a substantial motivating factor in an adverse employment decision." *Id*. at 1189.

Here, protected speech was ***not*** a substantial or motivating factor in Plaintiff's demotion. Rather, Plaintiff was demoted because she admitted to violating multiple DCSO policies and her actions undoubtedly showed a division between her and Sheriff Spurlock. (SOMF ¶¶ 20-30). Plaintiff's behavior, which resulted in her demotion, "call[ed] into question her judgment in not realizing the potential ramifications of her actions until she was confronted with that behavior by Sheriff Spurlock." (**Ex. G**, DCSO 163-67 at 167 – Not. of Findings 20IA-025, Conclusion section).

Likewise, there is no evidence that protected speech was a substantial or motivating factor in Plaintiff's termination. Plaintiff's employment was terminated on May 25, 2021—***almost eight months*** after the September 2020 incident where she engaged in allegedly protected speech. Thus, this lapse of time of more than half a year negates any causal inference that her allegedly protected speech was a substantial motivating factor in the decision to terminate her employment. *See Maestas*, 416 F.3d at 1189 ("[E]vidence such as a long delay between the employee's speech and challenged conduct or evidence of intervening events tend to undermine any inference of retaliatory motive and weaken the causal link."); *Cypert*, 661 F.3d at 484 ("[A] time lapse exceeding three months is insufficient to establish causation by temporal proximity alone."). *See also Haynes v. Level 3 Communs.*, 456 F.3d 1215, 1228 (10th Cir. 2006) (seven-month period). Plaintiff's mere assumption that her termination was motivated by the September 2020 incident is insufficient to withstand summary judgment. (*See* **Ex. A**, Kluth Dep. at 143:12-144:9).

Moreover, "inferring a causal relationship between the protected activity and the adverse action is not logical when the two are separated by an intervening event that independently could

have caused the adverse action." *Mizusawa v. United States Dep't of Labor*, 524 F. App'x 443, 448 (10th Cir. 2013). Here, Plaintiff admits that all command staff members (which includes Captains) should be in agreement with the Sheriff's vision, mission, and values and understood that "[Sheriff Spurlock] needed to be able to rely on [her] to carry out his duties and his desires and his mission, vision and values." (**Ex. A**, Kluth Dep. at 49:6-17, 211:6-14; *see also* **Ex. C**, Spurlock Dep. at 210:6-20). Multiple events after Plaintiff's demotion exhibited her failure to meet Sheriff Spurlock's vision, mission, and values, which were intervening events that broke any such causal chain. (*See* **Ex. C**, Spurlock Dep. at 71:7-12: "I would have to say that at the point of termination, it was – I've had enough issues of [Plaintiff] failing to follow the vision, mission, and values, and I could no longer trust her decisions as a command officer"; *see also* SOMF ¶ 31). In sum, Plaintiff's claim fails at the fourth step of *Garcetti/Pickering* because she cannot establish the required causal connection.

### 2. *Free Association theory*

To the extent Plaintiff alleges that her political association/affiliation caused her demotion or termination, her First Amendment claim still fails. Courts apply the *Elrod/Branti* test to analyze claims that a government employer took adverse employment action "on account of an employee's political association and/or political beliefs." *Barker v. City of Del City*, 215 F.3d 1134, 1137 (10th Cir. 2000) (citing *Elrod v. Burns*, 427 U.S. 347 (1976) (plurality opinion) and *Branti v. Finkel*, 445 U.S. 507 (1980)). Under the *Elrod/Branti* line of cases, public employees receive First Amendment protection "from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." *Id*. at 1137-38 (citing *Mason v. Oklahoma Turnpike Auth*., 115 F.3d 1442, 1451 (10th Cir. 1997)). "[T]o defeat summary judgment

on her association claim, [Plaintiff] must establish a genuine dispute of fact that (1) political affiliation and/or beliefs were substantial or motivating factors behind [the adverse employment action]; and (2) her employment position did not require political allegiance." *Id*. at 1138 (citing *Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir. 1999) (internal quotations and brackets omitted).

As discussed in section I(A)(1)(c) above, there is no genuine dispute of fact that Plaintiff's political affiliation and/or beliefs were ***not*** substantial or motivating factors behind her demotion as Undersheriff. Plaintiff's political affiliation with the Republican Party or her political beliefs in conservative values were not the reasons for her demotion. (*See, e.g*., **Ex. C**, Spurlock Dep. at 131:21-25: Q: "Does it matter what candidate or party a member supports when you assess whether there's been a violation of Section EE, participation in election campaigns?"; A: "It does not."; *Id*. at 132:4-7: Q: "If you are assessing a violation of Section EE, it wouldn't matter whether the political activity supported Republicans or Democrats; is that right?"; A: "It would not."). Rather, she was demoted for multiple DCSO policy violations, which she admitted. Likewise, Plaintiff's political affiliation and/or beliefs were ***not*** substantial or motivating factors in her termination. Plaintiff was terminated because she failed to meet Sheriff Spurlock's vision, mission, and values. (*See supra* at 17-18).

**B. Sheriff Spurlock is entitled to summary judgment on Plaintiff's Fourteenth Amendment Procedural Due Process claim (Claim 2).**

"To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (citation omitted). "In order

to establish a property interest in public employment protected by due process guarantees, a plaintiff must show a right to continued employment." *Kee v. Town of Mt. Vill.*, No. 19-cv-01746-NYW, 2019 U.S. Dist. LEXIS 215692, at \*10 (D. Colo. Dec. 11, 2019) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)). "Only if a public employee has a property interest in his employment does there need to be 'some kind of hearing prior to the discharge of the employee.'" *Id.* (citing *Teigen v. Renfrow*, 511 F.3d 1072, 1079 (10th Cir. 2007) (internal brackets omitted)).

Plaintiff did not possess a property interest in continued employment with DCSO. There is no evidence that Plaintiff's employment was anything other than "at will." (*See* **Ex. S**, KLUTH 14-15 at 14 - DCSO's General Administration Manuals and Authority § I; "Employment with the County and Sheriff's Office is at will. Employees may leave employment with Douglas County at any time and for any reason, and the Sheriff retains an identical right."). C.R.S. § 30-10-504 provides that the undersheriff serves "during the pleasure of the sheriff." C.R.S. § 30-10-506 provides that a sheriff may revoke deputy appointments "at-will." Plaintiff's contention that C.R.S. § 30-10-506 gives rise to a constitutionally protected property interest in continued employment (Complaint, ¶ 175) is belied by this District's interpretation of the statute. *See McLallen v. Taylor*, 2012 U.S. Dist. LEXIS 18588, No. 10-cv-01187-RPM, \*9-10 (D. Colo. Feb. 15, 2012) (finding the statute does not create a constitutionally protected property interest); *see also Coates v. Adams Cty. Sheriff's Office*, No. 20-cv-01936-STV, \*36-37 (D. Colo. Sept. 27, 2022) ("Multiple courts in this District have analyzed Section 506.... All have rejected the argument that this statutory provision provides the type of 'substantive restrictions on the [sheriff's] discretion' required to create a protected property right.") (citations omitted).

To the extent Plaintiff claims a "procedural" interest in receiving notice of the reason for the revocation of appointment and "an opportunity to be heard" based on C.R.S. § 30-10-506, her claim still fails because she received sufficient notice and opportunity to be heard.[4] For claims of denial of pre-termination procedural rights, "only the core of notice and an opportunity to be heard" is required. *Hulen v. Yates*, 322 F.3d 1229, 1248 (10th Cir. 2003). The standard is "not very stringent." *Id.* (citing *West*, 967 F.2d 362, 368 (10th Cir. 1992)). "The essence of procedural due process is the provision to the affected party of *some* kind of notice and *some* kind of hearing." *Onyx Props. LLC*, 838 F.3d 1039, 1044 (10th Cir. 2016) (emphasis in original). Even a limited conversation between an employee and his supervisor immediately prior to the employee's termination suffices. *See Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir. 1989). There also need not be a delay between the "notice" and the "opportunity to respond" accorded to the public employee. *Id.*

Sheriff Spurlock met Plaintiff in person and notified her, twice, that he intended to terminate her employment because she was not meeting his vision, mission, and values. (*See* **Ex. A**, Kluth Dep. at 164:22-168:5; **Ex. C**, Spurlock Dep. at 203:4-204:4, 208:8-209:3, 210:6-212:8; **Ex. T**, Leary Dep. at 62:10-64:15). Plaintiff had the opportunity to speak during the meeting and did so. *See id*. Accordingly, Plaintiff was provided sufficient notice and opportunity to be

---

[4] Further, even if Plaintiff were able to show that C.R.S. § 30-10-506 was violated (which it was not), her claim fails because a violation of state law does not necessarily amount to a violation of federal due process requirements. *See Duffy v. Moss*, No. 11-cv-00101-REB-MJW, 2011 U.S. Dist. LEXIS 109047, at *51 (D. Colo. Aug. 26, 2011). Similarly, violations of a law enforcement department's policy does not necessarily demonstrate infringement upon a constitutional right. *Sanchez v. Bauer*, No. 14-cv-02804-MSK-KLM, 2015 U.S. Dist. LEXIS 113190, at *18 (D. Colo. Aug. 25, 2015) (citing *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993) ("under section 1983 the issue is whether the government official violated the Constitution or federal law, not whether he violated the policies of a state agency"); *accord. Tanberg*, 401 F.3d 1151, 1160 (10th Cir. 2005).

heard. *See Roberts v. Winder*, 16 F.4th 1367, 1380 (10th Cir. 2021) (the plaintiff, a former employee of a sheriff's office, was afforded sufficient pre-deprivation process where his Undersheriff and Chief Deputy informed him that his rank and pay would be reduced and that he would be reassigned to patrol duties).

### C. Plaintiff cannot show clearly established law.

Under the second prong of the qualified immunity analysis, a plaintiff must prove that the defendant violated law that was clearly established at the time of the violation. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11. Clearly established law must not be defined "at a high level of generality" because "doing so avoids the crucial question [of] whether the official acted reasonably *in the particular circumstances that he or she faced*." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (emphasis added); *White v. Pauly*, 580 U.S. 73, 137 (2017); *Mullenix*, 577 U.S. at 12. Courts analyze qualified immunity at each step of the *Garcetti/Pickering* test. *See, e.g., Singh*, 936 F.3d at 1034-35 (granting qualified immunity "at the second step of *Garcetti/Pickering*").

Here, Plaintiff cannot show that every reasonable Sheriff in Sheriff Spurlock's position would have known that demoting their Undersheriff for multiple policy violations, which the Undersheriff admitted to, was unconstitutional under the First Amendment. Likewise, she cannot show that every reasonable Sheriff in Sheriff Spurlock's position would have known terminating a Captain for failure to meet the Sheriff's vision, mission, and values, nearly eight months after any allegedly protected speech or expression of political affiliation, was unconstitutional under the First Amendment. Similarly, Plaintiff cannot show that every reasonable Sheriff in Sheriff

Spurlock's position would have known that Plaintiff's termination under these circumstances would be a Fourteenth Amendment Procedural Due Process violation. Under similar circumstances, the Tenth Circuit recently held that the law was not clearly established. *Cf. Roberts*, 16 F.4th at 1380 (10th Cir. Oct. 26, 2021) ("in light of *West* and *Hulen*, the unreasonableness of Defendants' conduct was not "clearly established.") (citing *Wesby*, 138 S. Ct. at 589).[5]

## II.     PLAINTIFF'S CLAIM BASED ON C.R.S. § 13-21-131 FAILS (Claim 3)

Plaintiff alleges violations of the Colorado Constitution's free speech and due process provisions. For the reasons provided in section I (A) and (B) above (addressing Plaintiff's First Amendment and Fourteenth Amendment claims), Sheriff Spurlock is entitled to summary judgment on this claim.

## III.     PLAINTIFF'S BREACH OF IMPLIED CONTRACT CLAIM FAILS (Claim 4)

"An employee who is hired in Colorado for an indefinite period of time is an 'at will employee,' whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action." *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987) (citations omitted). "Summary judgment in favor of [defendant] is proper unless [the plaintiff] present[s] evidence sufficient to rebut the presumption of at-will employment." *Orback v. Hewlett-Packard Co*., 97 F.3d 429, 432 (10th Cir. 1996).

As explained in section I(B) above, there is no evidence that Plaintiff's employment was anything other than "at will." Sheriff Spurlock, by statute, had the right to revoke Plaintiff's appointment "at will." *See* C.R.S. § 30-10-506. Likewise, DCSO documents clearly and

---

[5] To the extent that Plaintiff is attempting to assert a *Monell* claim in this action based on Sheriff Spurlock's official capacity, her claim fails because there is no evidence of an underlying constitutional violation by Sheriff Spurlock. (*See* section I above).

conspicuously provide the same:  **Ex. S**, KLUTH 14-18 at 14 – General Administration – Manuals and Authority § I; **Ex. U**, DCSO 1724-30 at 1730 – Personnel Investigations – § I. Definition of Terms; **Ex. V**, DCSO 1742-47 at 1742 – Disciplinary/Corrective Action § II(A).

To the extent Plaintiff asserts her breach of implied contract claim to enforce any "termination procedures," her claim still fails. "Termination procedures set forth in an employee manual or handbook do not create an implied contract where a clear disclaimer of any contractual rights appears." *Jaynes v. Centura Health Corp.*, 148 P.3d 241, 248 (Colo. App. 2006) (citing *Axtell v. Park Sch. Dist. R-3*, 962 P.2d 319, 322 (Colo. App. 1998); *see also Romstad v. City of Colo. Springs*, 650 F. App'x 576, 580 (10th Cir. 2016). Here, there is no evidence of binding termination procedures applicable to Plaintiff's termination based on her failure to meet the Sheriff's vision, mission, and values; and DCSO documents clearly and conspicuously disclaim any contractual rights. Further, even if an implied contract exists with respect to termination procedures, Plaintiff cannot show that it was breached or that she was damaged by such a breach because, as discussed in section I(B) above, Plaintiff received sufficient notice and opportunity to be heard with respect to her termination.

## IV.    THERE IS NO BASIS FOR PLAINTIFF'S PUNITIVE DAMAGES REQUEST

"[P]unitive damages are to be awarded only when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992) (citing *Smith v. Wade,* 461 U.S. 30, 56 (1983)). Punitive damages are inappropriate where a plaintiff cannot show that the defendant either acted with malice or knew his actions were unconstitutional. *Jolivet*, 966 F.2d at 577. "The fact that a defendant's actions were objectively unconstitutional is

not considered when determining whether to award punitive damages." *Id*. "An award of punitive damages requires an assessment of the defendant's *subjective* state of mind." *Id*.

Sheriff Spurlock is entitled to summary judgment on Plaintiff's request for punitive damages because there is no evidence that Sheriff Spurlock acted with malice, evil intent or motive, or knew that his actions were unconstitutional (which they were not).[6]

## CONCLUSION

For the reasons described above, Plaintiff has failed to establish any triable issues of fact. Accordingly, this Court should enter summary judgment in favor of Sheriff Spurlock and dismiss all of Plaintiff's claims against him, in his individual and official capacities, with prejudice.

Dated this 2nd day of December 2022.

       ___*s/ William T. O'Connell, III*_____
       William T. O'Connell, III
       Saugat K. Thapa
       WELLS, ANDERSON & RACE, LLC
       1700 Broadway, Suite 900
       Denver, CO 80290
       Telephone: 303-830-1212
       Email: woconnell@warllc.com; sthapa@warllc.com

       **ATTORNEYS FOR DEFENDANT**
       **TONY SPURLOCK**

---

[6] Plaintiff cannot, as a matter of law, obtain punitive damages from Sheriff Spurlock in his official capacity because "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981).

To the extent Plaintiff's punitive damages claim is related to her state law claim under § 13-21-131, it still fails. *See* C.R.S. § 13-21-102 (requiring the injury complained of be attended by circumstances of fraud, malice, or willful and wanton conduct).

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 2, 2022, a true and correct copy of the above and foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of Court using the CM/ECF system and/or sent via e-mail to the following e-mail addresses:

Felipe Bohnet-Gomez, Esq.
Matthew J. Cron, Esq.
Siddhartha H. Rathod, Esq.
**RATHOD MOHAMEDBHAI LLC**
2701 Lawrence Street, Suite 100
Denver, CO  80205
*fbg@rmlawyers.com*
*mc@rmlawyers.com*
*sr@rmlawyers.com*

Attorneys for Plaintiff

*s/ Barbara McCall*
Barbara McCall, Legal Assistant