


# DOUGLAS COUNTY SHERIFF'S OFFICE
## INTERNAL AFFAIRS

### NOTIFICATION OF FINDINGS / 20IA-025

DATE: November 12, 2020
TO: Undersheriff Holly Nicholson-Kluth
FROM: Sheriff Anthony Spurlock
SUBJECT: **DISPOSITION**

You are hereby notified that the investigation of alleged misconduct has been completed. The final dispositions are shown below.

| SECTION # | NATURE OF VIOLATION | DISPOSITION |
|---|---|---|
| P&P C-101(II)(EE) | Participating in Election Campaigns | **SUSTAINED** |
| P&P C-101(II)(U) | On- and Off- Duty Conduct | **SUSTAINED** |
| P&P C-101(II)(CC) | Exercising Discretion | **SUSTAINED** |
| P&P C-100(XV) | Responsibility for Conduct | **SUSTAINED** |
| P&P B-127(III) | Internet Social Networking and Personal Websites | **SUSTAINED** |
| P&P | Law Enforcement Code of Ethics | **SUSTAINED** |

### Summary

Undersheriff Holly Nicholson-Kluth was contacted by Stu Parker (Douglas County Republican Party / DCGOP) regarding a Twitter post by Sheriff Anthony Spurlock in which the Sheriff pledged support for Democratic candidate Lisa Neal-Graves, who was running for a seat on the Douglas County Board of County Commissioners. As the result of communications Undersheriff Nicholson-Kluth had with Stu Parker and Chief Deputy Timothy Moore, Undersheriff Nicholson-Kluth generated a Facebook post in which she pledged support for only Republican candidates in the upcoming General Election. Undersheriff Nicholson-Kluth also sent a text to Stu Parker in which she re-stated her support for only Republican candidates in the upcoming General Election.

Undersheriff Nicholson-Kluth knew that Stu Parker intended to use the text she sent to him in literature that the DCGOP executive committee intended to use and disseminate in their efforts to put a "positive spin" on supporting Republican candidates in light of Sheriff's Spurlock's Twitter post supporting a democratic candidate for County Commissioner

Undersheriff Nicholson-Kluth knew that Chief Moore would reach out to Douglas County Sheriff's Office (DCSO) command personnel who are or were previously affiliated with the DCGOP soliciting written communication from those individuals also pledging support for only Republican candidates in the upcoming election. Undersheriff Nicholson-Kluth had conversations with Chief Moore about this endeavor while Chief Moore was both on and off-duty and also

directed Chief Moore in the manner in which she believed a specific DCSO Captain should be contacted. Additionally, Undersheriff Nicholson-Kluth also knew that Chief Moore was contacting the DCSO command personnel while he (Chief Moore) was on-duty and at the DCSO headquarters complex

### Standard of Conduct / Policy

P&P C-101(II)(EE)   Participating in Election Campaigns

Members shall not engage in any political activity while on duty, or while in uniform, or at any other time if to do so would conflict with their duties or impair their ability to perform their duties.

Members shall not directly or indirectly use or attempt to use their official position to influence the political activity of another person.

P&P C -101(II)(U)   On- and Off- Duty Conduct

Members must not engage in any activity or conduct, on- or off-duty, which discredits them, the county or the Office.

P&P C-101(II)(CC)   Exercising Discretion

All members are expected to rely on good judgment. Official decisions must be reasonable, well-articulated, warranted and justified and, of course, consistent with applicable law.<LE 1.2.7> Members who engage in conduct that is, or reasonably appears to be, excessive, unwarranted and/or unjustified may be investigated for either a specific act of misconduct or an allegation of failure to exercise appropriate judgment and discretion.

P&P C-100(XV)   Responsibility for Conduct

Supervisors shall investigate reports of laxity in the performance of duty or violations of Office Policy and Procedures. After determining the facts, the supervisor shall report the findings in writing to his or her immediate supervisor. Appropriate action will be taken by the supervisor to correct the problems that have been discovered.

P&P B-127(III)   Internet Social Networking and Personal Websites

A. Employee Internet Postings
The Sheriff's Office expects employees to use common sense when posting on any social media site.

Employees should consider the possible adverse consequences of internet postings and are

SPURLOCK Motion for Summary Judgment, Exhibit G

DCSO 000164

encouraged to seek the guidance of supervisors or the social media coordinator regarding any posting that may disrupt law enforcement operations or impede the performance of official duties.

Personnel can express themselves on social media sites to the degree that their speech and postings do not:

- Impair working relationships of the Sheriff's Office for which loyalty and confidentiality are important.
- Interfere with or compromise a criminal or administrative investigation, bring disrepute, discredit, or damage to the integrity of the Sheriff's Office or content that would otherwise violate the On and Off-Duty Conduct provision contained in section II.(U) of P&P-C-101, to wit: *Members must not engage in any activity or conduct, on- or off-duty, which discredits them, the County or the Office.*
- Impair discipline and harmony among coworkers.

Law Enforcement Code of Ethics

I will keep my private life unsullied as an example to all and will behave in a manner that does not bring discredit to me or to my agency.

I will never act officiously or permit personal feelings, prejudices, political beliefs, aspirations, animosities or friendships to influence my decisions.

### Evidence Supporting Synopsis

Undersheriff Nicholson-Kluth was at home the week of September 21st to 25th convalescing from a recent surgery. However, she had several communications / conversations with Chief Moore regarding his endeavors to solicit the written communication that Stu Parker wanted from DCSO command staff. Undersheriff Nicholson-Kluth knew (or should have known) that Chief Moore was on-duty and at the DCSO headquarters complex while he was facilitating Stu Parker's request. Additionally, Undersheriff Nicholson-Kluth is aware that Chief Moore is her direct subordinate.

Undersheriff Nicholson-Kluth was contacted by Stu Parker who told her that he "wanted to make a positive statement" in response to Sheriff Spurlock's Tweet supporting a Democratic candidate. Undersheriff Nicholson-Kluth stated that Stu Parker was hoping to get "quotes from people that were in the…GOP, who were also in Command Staff supporting the candidates." Undersheriff Nicholson-Kluth provided a quote via text to the Stu Parker and also posted to her personal Facebook page a statement pledging her support for "conservative candidates."

When asked what the DCGOP was going to do with the information from command staff, Undersheriff Nicholson-Kluth stated, "I got the feeling they wanted to do a social media post…"

SPURLOCK Motion for Summary Judgment, Exhibit G

DCSO 000165

# DOUGLAS COUNTY SHERIFF'S OFFICE
## INTERNAL AFFAIRS

### NOTIFICATION OF FINDINGS / 20IA-025

When contacted by Sheriff Spurlock on September 25th regarding this situation, Undersheriff Nicholson-Kluth told him that after the DCGOP obtained the letters from the DCSO command staff, they planned to get photos of the DCSO command staff off the web and post the pictures with their statements in support of the DCGOP and Republican candidates.

When Undersheriff Nicholson-Kluth was provided a copy of the media post the DCGOP planned to disseminate, she had a text conversation with Chief Moore in which she suggested some changes to the media post. Undersheriff Nicholson-Kluth did not "shut down" this endeavor by the DCGOP to use her photo and quote but rather sanctioned it by only suggesting changes to the post with Chief Moore. The DCGOP's use of this media post was intended to demonstrate to voters that not all command staff at DCSO were in support of the democratic candidate Sheriff Spurlock had publicly endorsed.

Undersheriff Nicholson-Kluth had a conversation with Sheriff Spurlock several days after she reviewed the post that the DCGOP was intending to use. Undersheriff Nicholson-Kluth realized during the conversation that Sheriff Spurlock was very upset after which she immediately called Chief Moore and told him "we are not doing this". She also took her Facebook post down and called Stu Parker and asked him not to use the material he had been provided. She had not considered what they were doing was going to give the impression there was "a rift" between her and Sheriff Spurlock.

During her interview, when Undersheriff Nicholson-Kluth was asked in retrospect if she understood the Sheriff being upset about this situation; she replied that when she spoke with the Sheriff he told her that, "It appeared to create a division that people would think that there's a division between he and I. Made total sense to me." She further responded to the Sheriff, "Yeah, you're right I hadn't thought about it that way."

Also, during her interview, Undersheriff Nicholson-Kluth was asked if she had any concerns about having these conversations with Chief Moore while he was working; that these conversations may be a violation of DCSO policy or perhaps a violation of the Hatch Act. Undersheriff Nicholson-Kluth replied, "Yeah, I didn't think about that."

At no time did Undersheriff Nicholson-Kluth have a conversation with Sheriff Spurlock about this situation prior to the Sheriff contacting her about her endeavors (on Friday Sept. 25, 2020) with the DCGOP after he had heard about it from a third party.

During her interview, it was stated to Undersheriff Nicholson-Kluth that it was only after she had spoken with Sheriff Spurlock did she realize that what was occurring in this situation was contrary to the Sheriff and that there was going to be perceived perhaps internally and externally a split between command staff. Undersheriff Nicholson-Kluth replied, "Yeah, and I understood that. I mean I'm his right-hand person and I'm supposed to be in-sync with him on stuff…When he explained it to me that it would cause a rift it would make people think there's a rift in the department, internally. Yeah, that's not good. And so I understood that when he said that and I'm like, yeah, that makes sense…"

SPURLOCK Motion for Summary Judgment, Exhibit G

DCSO 000166



# DOUGLAS COUNTY SHERIFF'S OFFICE
## INTERNAL AFFAIRS

### NOTIFICATION OF FINDINGS / 20IA-025

**Evidence Refuting**

Regarding Undersheriff Nicholson-Kluth's interactions with the DCGOP relative to this incident, she stated during her interview, "I had not intended that to be against him (the Sheriff) more just here's my stance personally".

**Conclusion**

As demonstrated in the *Evidence Supporting Synopsis* section of this document, Undersheriff Nicholson-Kluth's behavior in this incident calls into question her judgement in not realizing the potential ramifications of her actions until she was confronted with that behavior by Sheriff Spurlock.

By a preponderance of the evidence, the listed policy violations are **SUSTAINED**.

Member served with a copy of this **Notification of Findings** on _11/12/2020_

Member signature and OSN _[signature] #893_

Server signature and OSN _[signature] 8003_

Member is to receive a copy of this **Notification of Finding** and copy to be retained with the Internal Affairs investigation folder.

The Internal Affairs Section is an investigative entity and does not impose corrective or disciplinary sanctions on members whose allegations of misconduct have been sustained.