## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-3417-NYW-MEH

HOLLY KLUTH,

    Plaintiff,

v.

TONY SPURLOCK, individually, and in his official capacity as Douglas County Sheriff,

    Defendants.

### Plaintiff's Motion for Partial Summary Judgment

Plaintiff Holly Kluth is entitled to summary judgment on her breach of implied contract claim (Compl. ¶¶ 198-204) and on Defendants' affirmative defense of mitigation (Ans. 18 at ¶ 17).[1]

Ms. Kluth's 32-year career with the Douglas County Sheriff's Office ended abruptly on May 25, 2021, when, without warning or notice, Defendant Tony Spurlock called her into a meeting and informed her she was terminated, effective immediately. The only explanation provided by Spurlock was that Ms. Kluth had failed to meet the "mission, vision, and values" of the Sheriff's Office, and that "nothing had changed since the fall." When Ms. Kluth asked Spurlock what she had done wrong, he refused to answer and then left the meeting.

The undisputed facts in this case show that, in terminating Ms. Kluth, Spurlock deliberately violated the DCSO's Disciplinary Policy, which set forth the procedures for

---

[1] Because Spurlock's termination of Ms. Kluth was motivated by her protected political activity and affiliation, Ms. Kluth has brought First Amendment retaliation claims under 42 U.S.C. § 1983 and analogous state law claims under C.R.S. § 13-21-131. Those claims are not the subject of this motion.

terminations. The policy required Ms. Kluth to be provided with, among other things, a pre-disciplinary hearing, notice of the reasons for the proposed termination, an opportunity to present mitigating information to be considered in the decision-making process, and an opportunity to appeal the termination decision before it took effect. It cannot be genuinely disputed that Ms. Kluth's termination did not follow any of these requirements, which were assiduously observed in nearly every termination at the DCSO. Only two prior terminations at the DCSO had failed to comply with the agency's Disciplinary Policy: a deputy who confessed to murder, and a deputy who raped an inmate.

Unlike a typical policy in an employee handbook, which can be disclaimed, the DCSO's Disciplinary Policy was a binding implied contract under clearly established Colorado law. This is because the Disciplinary Policy's procedures effectuated or implemented the statutory due process rights granted to sheriffs' deputies, and so "violation of those policies may form the basis of an implied employment contract claim" as a matter of law. *Cummings v. Brown*, 2021 COA 122, ¶ 14, 500 P.3d 1140, 1143 (emphasis added).

Because it is not genuinely disputed that Spurlock's termination of Ms. Kluth violated the Disciplinary Policy, and therefore breached an implied contract of employment, this Court should enter summary judgment in Ms. Kluth's favor on her breach of implied contract claim.

Ms. Kluth is also entitled to summary judgment on Spurlock's mitigation affirmative defense. Under Tenth Circuit precedent, an essential element that an employer must prove to establish a mitigation affirmative defense is that "there were suitable positions which the employee could have discovered and for which they were qualified." *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1474 (10th Cir. 1993). Spurlock, however, has presented no evidence whatsoever on this element of the defense. No evidence of any allegedly

suitable positions—nor any evidence that Ms. Kluth was qualified for and could obtain any such positions—was produced in discovery, despite Ms. Kluth's discovery requests for such information. Nor did Spurlock disclose any witness who could testify to such positions. Spurlock has thus failed to create a triable issue of fact with respect to the mitigation defense, and Ms. Kluth is entitled to judgment as a matter of law on it.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

1. The Douglas County Sheriff's Office ("DCSO") is the law enforcement agency of Douglas County. (Compl. ¶ 5; Ans. ¶ 5.)

2. Plaintiff Holly Kluth was employed by the DCSO from 1989 until May 25, 2021, held numerous different positions at the agency, and worked under four different sheriffs. (Compl. ¶¶ 10-13; Ans. ¶¶ 10-13.)

3. Defendant Tony Spurlock was and is the elected Sheriff of Douglas County. (Compl. ¶ 6; Ans. ¶ 6.)

4. Spurlock was first appointed as Douglas County Sheriff in mid-2014. (Compl. ¶ 15; Ans. ¶ 15.)

5. Spurlock was then elected Douglas County Sheriff in 2014 and 2018, as the Republican Party candidate for the office. (Compl. ¶¶ 15-16; Ans. ¶¶ 15-16; Ex. 1, Spurlock Dep. at 57:3-8.)

6. At all relevant times, Defendant Spurlock was the final policymaker for the DCSO with respect to personnel matters and acted under color of state law in his capacity as Douglas County Sheriff. (Compl. ¶¶ 7-9; Ans. ¶¶ 7-9.)

7. After Spurlock was first appointed Sheriff in 2014, he appointed Ms. Kluth to the position of Undersheriff at the DCSO. (Compl. ¶¶ 15, 17; Ans. ¶¶ 15, 17.)

3

8. From her appointment in 2014 through at least July 19, 2019, Ms. Kluth did an incredible job as Spurlock's Undersheriff. (Ex. 1, Spurlock Dep. at 102:3-104:18.)

9. On November 16, 2020, Spurlock demoted Ms. Kluth to Captain of Patrol. (Ex. 1, Spurlock Dep. at 104:22-25, 139:15-20; Ans. ¶ 18.)

### The DCSO's Disciplinary Policy

10. The DCSO's disciplinary policy, P&P-I-102 – Disciplinary / Corrective Action (hereinafter "Disciplinary Policy") was issued by Spurlock and was in effect at the time of Plaintiff's termination. (Ex. 2, DCSO Disciplinary Policy at 1.)

11. The Disciplinary Policy sets forth the procedures by which DCSO employees are disciplined or terminated. (Ex. 1, Spurlock Dep. at 219:25-220:2.)

12. The Disciplinary Policy applied to Ms. Kluth. (Compl. ¶ 141, 142; Ans. ¶¶ 141, 142; Ex. 1, Spurlock Dep. at 220:3-5.)

13. No other DCSO policies address deputies' rights to notice or opportunity to be heard regarding their termination. (Ex. 3, DCSO Policy and Procedure Manual Table of Contents.)

14. The Disciplinary Policy effectuates deputies' statutory rights to notice and an opportunity to be heard pursuant to C.R.S. § 30-10-506. (Ex. 4, Defendant's Response to Plaintiff's Second Set of RFAs, at 2 (Response to Request for Admission No. 5); Compl. ¶ 201; Ans. ¶ 201; Ex. 5, Walcher Dep. at 280:23-281-5, 282:1-5.)

15. The Disciplinary Policy provides that, in the case of "any discipline which involves a 2-year letter of reprimand or more," such as a termination, the DCSO will conduct a "pre-disciplinary hearing," of which the employee will receive "written notice or verbal

4

notification . . . at least 24 hours before the hearing time." (Ex. 2 DCSO Disciplinary Policy, at § VII.B.)

16. The Disciplinary Policy provides that the notice of the pre-disciplinary hearing "must include the nature of the charge(s) sustained against the member and a description of the intended sanctions." (Ex. 2, DCSO Disciplinary Policy, at § VII.B.)

17. The Disciplinary Policy requires that a termination be "finalized only after the employee has had an opportunity to reply to the charges, and present mitigating information" at the pre-disciplinary hearing. (Ex. 2, DCSO Disciplinary Policy, at § VII.B.2.)

18. The Disciplinary Policy provides that "[t]he employee's response to the charges must be weighed by the supervisor in the decision-making process." (Ex. 2, DCSO Disciplinary Policy, at § VII.B.2.)

19. The Disciplinary Policy provides that, "[a]fter the pre-disciplinary hearing and review of the employee's response to the charges," the employee shall receive "written notice stating the final disciplinary decision." (Ex. 2, DCSO Disciplinary Policy, at § VII.B.4.)

20. The Disciplinary Policy provides that the written notice "shall also contain a statement citing the reason(s) for . . . termination." (Ex. 2, DCSO Disciplinary Policy, at § VII.B.6.)

21. In the case of a termination, the Disciplinary Policy further provides that the written notice state "the date the . . . termination is to take effect," which "shall be no earlier than one (1) business day past the five business days that the member has to file an appeal." (Ex. 2, DCSO Disciplinary Policy, at § VII.B.6.)

22. The Disciplinary Policy also provides procedures for the appeal of a termination "within five (5) business days of the date of the discipline." (Ex. 2, DCSO Disciplinary Policy, at § VIII.D.)

23. The Disciplinary Policy provides that a termination "will not be imposed until the employee waives appeal or after the appeal deadline, whichever comes first." (Ex. 2, DCSO Disciplinary Policy, at § VIII.E.2.)

24. The Disciplinary Policy does not impose any performance obligations on employees. (Ex. 2, DCSO Disciplinary Policy.)

### Ms. Kluth's Termination

25. On February 6, 2021, Ms. Kluth informed Spurlock that she was going to run for Douglas County Sheriff in 2022. (Ex. 6, Kluth Dep. at 102:1-12.)

26. Ms. Kluth publicly announced her candidacy on February 13, 2021. (Ex. 6, Kluth Dep. at 101:22-25.)

27. Ms. Kluth was transferred from Captain of Patrol to Detentions Captain on February 23, 2021. (Ex. 7, Duffy Dep. at 77:10-12 (30(b)(6) testimony of DCSO); Ans. ¶ 19.)

28. The decision was made to transfer Ms. Kluth to the Detentions division because the Sheriff and Undersheriff had confidence in Ms. Kluth's experience, knowledge, and leadership. (Ex. 7, Duffy Dep. at 78:3-14 (30(b)(6) testimony of DCSO).)

29. It was an honor for Ms. Kluth to be selected for the Detentions Captain assignment. (Ex. 7, Duffy Dep. at 79:3-9 (30(b)(6) testimony of DCSO).)

30. On May 25, 2021, three months after her transfer to Detentions, Spurlock terminated Ms. Kluth from the DCSO at a meeting with her, Laura Leary, and Jason Kennedy. (Compl. ¶¶ 20, 91-92, 96; Ans. ¶¶ 20, 91-92, 96; Ex. 1, Spurlock Dep. at 203:4-12.)

31. Ms. Kluth had no major performance issues during her time as Captain in the Detentions Divisions that contributed to Spurlock's decision to terminate her employment. (Ex. 1, Spurlock Dep. at 265:6-24.)

32. Sheriff Spurlock had already finalized his decision to terminate Plaintiff before the May 25, 2021 meeting. (Ex. 1, Spurlock Dep. at 204:22-23, 205:19-24, 224:15-225:2.)

33. Spurlock also decided that Plaintiff needed to be terminated without following the Disciplinary Policy's procedures. (Ex. 1, Spurlock Dep. at 274:18-22.)

34. Spurlock's termination of Ms. Kluth did not follow the procedures outlined in the Disciplinary Policy. (Ex. 1, Spurlock Dep. at 227:3-6).

35. Ms. Kluth never received a pre-disciplinary hearing. (Ex. 1, Spurlock Dep. at 222:11-13, 223:11-224:9.)

36. Plaintiff did not receive any notice of her termination until the May 25, 2021 meeting. (Ex. 1, Spurlock Dep. at 205:9-18, 206:20-23.)

37. The only explanation Spurlock provided Ms. Kluth regarding her termination was that "nothing has changed since the fall" of 2020, and that Ms. Kluth had failed to meet the "mission, vision, and values" of the Sheriff's Office. (Ex. 1, Spurlock Dep. at 213:16-25, 216:23-217:6; Ex. 8, Leary Dep. at 63:9-15; Compl. ¶¶ 93, 95-96; Ans. ¶¶ 93, 95-96.)

38. At the May 25, 2021 meeting, Ms. Kluth asked how she had failed to meet the mission, vision, and values, but Spurlock refused to specify and then left the meeting. (Ex. 1, Spurlock Dep. at 204:9-21, 208:8-211:24; Ex. 6, Kluth Dep. at 165:8-166:23, 167:2-14; Ex. 8, Leary Dep. at 63:16-64:17.)

39. Anyone terminated from the DCSO has, by definition, failed to meet the mission, vision, and values of the DCSO. (Ex. 1, Spurlock Dep. at 293:11-24.)

7

40. Spurlock did not prepare or provide Ms. Kluth any termination letter or other written notice of her termination. (Ex. 1, Spurlock Dep. at 209:17-18, 225:22-25, 226:9-14; Ex. 6, Kluth Dep. at 192:1-21; Ex. 4, Defendant's Response to Plaintiff's Second Set of RFAs, at 2 (Response to Request for Admission Nos. 6-7).)

41. Spurlock's termination of Ms. Kluth was effective immediately. (Ex. 1, Spurlock Dep. at 206:5-7; Ex. 8, Leary Dep. at 64:11-17.)

42. At the May 25, 2021 meeting, Ms. Kluth was not notified that she could appeal Spurlock's decision. (Ex. 6, Kluth Dep. at 193:19-195:12; Ex. 8, Leary Dep. at 69:21-25.)

43. Ms. Kluth did not waive any appeal rights at the May 25, 2021 meeting. (Ex. 8, Leary Dep. at 69:21-25; Ex. 9, Defendant's Response to Plaintiff's Second Set of Interrogatories, at 5-6 (Response to Interrogatory No. 17).)

44. Before the termination of Ms. Kluth, the only terminations at the DCSO that had not followed the Disciplinary Policy were the terminations of a deputy who confessed to murder, and a deputy who raped an inmate. (Ex. 1, Spurlock Dep. at 227:7-229:19; Ex. 10, McMahan Dep. at 99:7-100:25.)

### Facts Relating to Defendant's Mitigation Affirmative Defense

45. In response to Ms. Kluth's interrogatory seeking the material factual basis for Spurlock's mitigation defense, Spurlock did not identify any allegedly comparable job positions which Plaintiff could have discovered and for which Plaintiff was qualified in either his individual or official capacity. (Ex. 11, Defendant's Supplemental Responses to Plaintiff's First Set of Interrogatories, at 11-12 (Response to Interrogatory No. 9).)

46. Spurlock did not produce any documents in response to Ms. Kluth's request for production seeking any documents evidencing the material factual basis for Defendant's

mitigation defense in either his individual or official capacity. (Ex. 12, Defendant's Supplemental Responses to Plaintiff's First Set of RFPs, at 7-8 (Response to RFP 11).)

47. None of the witnesses identified by Spurlock in either his individual or official capacity under Rule 26(a)(1) are endorsed on subjects pertaining to Defendant's mitigation defense. (Ex. 13, Defendant's Initial Disclosures.)

48. No documents regarding other suitable positions were disclosed by Spurlock in either his individual or official capacity under Rule 26(a)(1). (Ex. 14, Decl. of Felipe Bohnet-Gomez, at ¶ 2.)

49. Spurlock did not disclose any expert witnesses in this case in either his individual or official capacity. (Ex. 14, Decl. of Felipe Bohnet-Gomez, at ¶ 3.)

## LEGAL STANDARD

Summary judgment is warranted on any claim, or any "part of" a claim, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). "Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury." *Goodwin v. Nat'l Elec. Annuity Plan*, No. 20-CV-01044-WJM-STV, 2021 WL 4555988, at *2 (D. Colo. Aug. 26, 2021) (citations omitted). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for

9

trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

Once the movant has met "the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law," the burden shifts to the non-movant to "set forth specific facts that would be admissible in evidence from which a rational trier of fact could find for the nonmoving party." *Adler v. Wal-Mart Stores, Inc.*, 144 F. 3d 664, 670-71 (10th Cir. 1998).

## ARGUMENT

### I. Summary Judgment is Warranted on Ms. Kluth's Breach of Implied Contract Claim Against Spurlock in his Official Capacity

Because the factual record in this case inarguably shows that Ms. Kluth's termination violated the DCSO's Disciplinary Policy, summary judgment is warranted on her breach of implied contract claim against Spurlock in his official capacity.[2]

Colorado Revised Statute § 30-10-506 provides, in relevant part, that "[a] sheriff shall adopt personnel policies, including policies for the review of revocation of appointment. Before revoking an appointment of a deputy, the sheriff shall notify the deputy of the reason for the proposed revocation and shall give the deputy an opportunity to be heard by the sheriff."[3] The DCSO's Disciplinary Policy effectuates deputies' statutory rights to notice and an opportunity to be heard pursuant to C.R.S. § 30-10-506. (SMF ¶ 12.) Because the Disciplinary Policy effectuates statutory due process rights as set forth in § 30-10-506, it could not be disclaimed,

---

[2] Although Ms. Kluth brought a breach of implied contract claim against Spurlock in both his individual and official capacities, she seeks summary judgment only on the official-capacity claim, because any implied contract was between Ms. Kluth and the DCSO, not Spurlock individually.

[3] The statute applies to sheriff's deputies regardless of their rank. Even the Undersheriff is also a 'deputy.' *See* C.R.S. § 30-10-504.

10

and any evidence of Spurlock's intent is "immaterial" to whether the policy formed a binding implied contract of employment. *Cummings v. Brown*, 2021 COA 122, ¶ 14, 500 P.3d 1140, 1144.

The Disciplinary Policy is, therefore, a binding implied contract with respect to Ms. Kluth's employment at the DCSO, as a matter of Colorado law. *Id.* at 1143 There is no genuine factual dispute that Spurlock's termination of Ms. Kluth violated the Disciplinary Policy, and thus breached that implied contract. And because the Disciplinary Policy could not be—and by its own terms was not—conditioned on the performance of any obligation on the part of Ms. Kluth, she is entitled to summary judgment on her breach of implied contract claim.

### A. Colorado law on breach of implied contract claims is different for sheriffs' deputies.

Under Colorado law, an implied contract claim generally consists of the following elements: "(1) the existence of a contract; (2) performance by [the plaintiff] or a justification for nonperformance; (3) [the defendant's] failure to perform the contract; and (4) resulting damages." *Steele v. Stallion Rockies, LTD*, 106 F. Supp. 3d 1205, 1221 (D. Colo. 2015) (citations omitted). In addition, under Colorado law, "'contract interpretation is a question of law for the court.'" *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1017 (10th Cir. 2018) (brackets omitted) (quoting *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 696 (Colo. 2009)).

Ordinarily, an at-will employee "may be able to enforce the termination procedures in an employee manual" under an implied contract theory if she "can demonstrate, first, that in promulgating the termination procedures the employer was making an offer to the employee . . . and second, that h[er] initial or continued employment constituted acceptance of and consideration for those procedures." *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987). But if the policy manual contains a "clear and conspicuous disclaimer" of the employer's

11

intent to be bound by its policies, "an implied contract claim ordinarily fails as a matter of law." *Cummings v. Arapahoe Cty. Sheriff's Dep't*, 2018 COA 136, ¶ 56, 440 P.3d 1179, 1189 (*Cummings I*).

As relevant here, however, Colorado law on the formation of implied contracts is substantially different in the specific context of the termination of sheriffs' deputies because of the statutory requirements of C.R.S. § 30-10-106. Thus, the provisions of a sheriff's office policy manual that "effectuate the due process rights granted [to sheriffs' deputies] by C.R.S. § 30-10-506" are binding and form an implied employment contract as a matter of law, notwithstanding any disclaimers or other evidence that the sheriff did not intend to be bound. *Cummings I*, 2018 COA 136, ¶61; *Cummings v. Brown*, 2021 COA 122, ¶ 14, 500 P.3d 1140, 1144 (*Cummings II*) ("That the Sheriff sought to disclaim the due process requirements is immaterial because '[p]arties may not contract to abrogate statutory requirements and thereby contravene the public policy of this state.'") (citing *Cummings I*).

As the Colorado Court of Appeals explained in *Cummings I* and *Cummings II*, this is because the at-will employment status of sheriffs' deputies was "modified somewhat" by the 2006 amendments to C.R.S. § 30-10-506. *Cummings I*, ¶ 29, 440 P.3d at 1186. As amended, the statute permits sheriffs to "revoke [deputies'] appointments at will," but imposes three requirements: (1) it requires sheriffs to "adopt personnel policies, including policies for the review of revocation of [deputies'] appointments," and it requires sheriffs to (2) "notify the deputy of the reason for the proposed revocation" of the deputy's employment and to (3) "give the deputy an opportunity to be heard by the sheriff" before termination. C.R.S. § 30-10-506. As such, "the General Assembly combined two contradictory concepts—at-will employment for deputies, on the one hand, and the requirement that sheriffs provide at least some binding

employment rights to their deputies, on the other." *Id.* at ¶ 25, 440 P.2d at 1185. Thus, "*Cummings I* reasonably concluded that," given "the General Assembly's intent in amending section 30-10-506" and its statutory requirements, "to the extent [a sheriff's office's] **policies** effectuate the specific due process provisions of the statute, violation **of those policies** may form the basis of an implied employment contract claim." *Cummings II*, 2021 COA 122, ¶ 14, 500 P.3d at 1143 (emphasis added).

**B. The DCSO's Disciplinary Policy effectuates the due process rights granted by C.R.S. § 30-10-506 and is therefore an implied contract of employment.**

The DCSO's Disciplinary Policy, which applied to Ms. Kluth at the time of her termination, is the only DCSO employment policy that addresses deputies' rights to notice and opportunity to be heard with respect to the proposed termination of their employment. (SMF ¶¶ 1-6, 10-14.) The Disciplinary Policy is how Spurlock and the DCSO chose to implement the due process rights mandated by § 506 and is therefore an appropriate basis for an implied contract claim under *Cummings I* and *II*.

In addition to the fact that there are no other policies that would provide deputies with notice and opportunity to be heard in connection with their termination, the Disciplinary Policy also "effectuate[s] the specific due process rights granted by section 30-10-506" by setting forth "policies addressing the form [and] timing of the notice of the proposed revocation," as well as "procedural rules concerning the termination hearing." *Cummings II*, 2021 COA 122, ¶ 14, 500 P.3d at 1143. For example:

- § VII.B of the policy, which requires a 'pre-disciplinary hearing' and advance notice of the proposed termination, including the reasons for the termination, (SMF ¶¶ 15-16), provides "procedural rules concerning the termination hearing," *Cummings II*, 2021 COA 122, ¶ 14, 500 P.3d at 1143, and addresses the "form and timing of the

13

notice of the proposed revocation," *id.*, as well as the "opportunity to be heard by the sheriff," C.R.S. § 30-10-506;

- § VII.B.2, which requires the employee to be given a meaningful opportunity to present mitigating information, and requires such mitigating information be considered in the decision-making process, (SMF ¶¶ 17-18), addresses the "opportunity to be heard by the sheriff," C.R.S. § 30-10-506;

- §§ VII.B.4 and 6, which require written notice of the reasons for the termination, (SMF ¶¶ 19-20), address the "form . . . of the notice of the proposed revocation," *Cummings II*, 2021 COA 122, ¶ 14, 500 P.3d at 1143; and

- §§ VII.B.6 and VIII.E.2, which require that a noticed termination take effect only after the employee's right to appeal has passed, (SMF ¶¶ 21-23), address the "timing of the notice of the proposed revocation," *Cummings II*, 2021 COA 122, ¶ 14, 500 P.3d at 1143, as well as the "opportunity to be heard by the sheriff" through appeal, C.R.S. § 30-10-506; *see also id.* (requiring sheriffs to adopt "policies for the review of revocation of appointments").

Accordingly, the Disciplinary Policy effectuates the due process rights conferred on deputies by C.R.S. § 30-10-506, and "violation of [the Disciplinary Policy] may form the basis of an implied employment contract claim." *Cummings II*, 2021 COA 122, ¶ 14, 500 P.3d at 1143 (emphasis added).

### C. The Disciplinary Policy did not, and could not, require any particular performance on Ms. Kluth's part. To the extent it did, she substantially performed.

Although a plaintiff's substantial performance of her own contractual obligations can be an element of a breach of contract claim, here, the Disciplinary Policy did not, and could not,

14

require any particular performance on Ms. Kluth's part. To the extent that any performance from Ms. Kluth was required, she substantially performed.

By its own terms, the Disciplinary Policy did not impose any performance obligations on Ms. Kluth. (SMF ¶ 24.) Moreover, because the formation of an implied contract in this case is based on the explicit statutory rights and requirements of C.R.S. § 30-10-506, such a contract could not be conditioned on an employee's performance as a matter of law. *See Cummings I*, 2018 COA 136, at ¶ 43, 440 P.3d at 1187 ("Parties may not contract to abrogate statutory requirements and thereby contravene the public policy of this state."). Even in the context of an 'ordinary' breach of implied contract claim based on an employer's policies, it is the employee's "initial or continued employment [that] constitute[s] acceptance and consideration for those procedures." *Keenan*, 731 P.2d at 711. Ms. Kluth's performance would thus simply be her initial or continued employment, which cannot be disputed as she was employed by the DCSO for 32 years prior to her sudden termination. (SMF ¶ 2.) Accordingly, whether Ms. Kluth performed any contractual obligations need not be considered in determining whether she is entitled to judgment as a matter of law on her breach of implied contract claim. *See* CJI-Civ. 30:10, note [3] (explaining that a plaintiff's performance or substantial performance is only relevant to a breach of contract claim "if the plaintiff's performance or substantial performance of the contract is a condition precedent to plaintiff's right to recover under the contract.").

Nonetheless, to the extent any performance obligations can be inferred from the Disciplinary Policy, Ms. Kluth substantially performed any such obligations. Ms. Kluth, for example, attended the May 25, 2021 termination meeting, as instructed. (SMF ¶ 30.) Aside from the termination meeting, Ms. Kluth was not provided any other notice or process concerning her termination. (SMF ¶¶ 35-36.) There is no evidence that Ms. Kluth declined an offer to meet with

the sheriff about her termination, failed to show up for a pre-disciplinary hearing or other meeting, refused to accept any written termination notice, or abandoned her employment at any point prior to her termination.

### D. Spurlock's termination of Ms. Kluth breached the implied contract established by the DCSO's Disciplinary Policy

Ms. Kluth had no reason to expect she would be terminated on May 25, 2021. (SMF ¶¶ 25-29.) And it is undisputed that Ms. Kluth's termination did not follow the procedures set forth in the DCSO's disciplinary policy. (SMF ¶¶ 32-44) Indeed, Sheriff Spurlock conceded as much in his deposition. (SMF ¶¶ 33-34.) Specifically, Spurlock's termination of Ms. Kluth violated the Disciplinary Policy in several ways, including by:

- Altogether failing to conduct a pre-disciplinary hearing as required by § VII.B, (SMF ¶¶ 35-36),

- Failing to provide at least 24 hours' notice of a pre-disciplinary hearing as required by § VII.B, (SMF ¶ 35),

- Failing to provide at least 24 hours' notice of the reasons for the proposed termination § VII.B, (SMF ¶ 36),

- Finalizing the termination decision before giving Ms. Kluth an opportunity to respond to the charges against her and present mitigating information as required by § VII.B.2, (SMF ¶ 32),

- Failing to weigh any mitigating information Ms. Kluth might have provided in the decision-making process as required by § VII.B.2, (SMF ¶¶ 32, 37-39),

- Failing to provide Ms. Kluth with written notice containing the reasons for the termination as required by §§ VII.B.4 and 6, (SMF ¶ 40),

16

- Failing to delay the effective date of the termination to accommodate any appeal as required by §§ VII.B.6, VIII.E.2. (SMF ¶¶ 41-43).

Because there is no genuine dispute of material fact that Spurlock violated multiple provisions of the Disciplinary Policy that effectuated Ms. Kluth's rights to notice and opportunity to be heard pursuant to C.R.S. § 30-10-506, summary judgment is appropriate on Ms. Kluth's claim for breach of implied contract.[4] *Cummings II*, 2021 COA 122, ¶ 14, 500 P.3d at 1143.[5]

## II. Summary Judgment is Warranted on Spurlock's Mitigation Affirmative Defense

Spurlock has asserted a mitigation affirmative defense in both his individual and official capacities. (Ans. at 18.) Ms. Kluth is entitled to summary judgment on this affirmative defense because Spurlock has failed to produce any admissible evidence on an essential element of the affirmative defense. *See Mason v. Brigham Young Univ.*, No. 2:06-CV-826-TS, 2008 WL 312953, at *1 (D. Utah Feb. 1, 2008) (a plaintiff "may meet her initial burden of making a prima

---

[4] Although neither material nor necessary for purposes of summary judgment here, Spurlock also did not substantively comply with the due process requirements of § 506. It is undisputed that the only explanation Spurlock gave Ms. Kluth for her termination was that "nothing has changed since the fall" and that Ms. Kluth had not lived up to Spurlock's "mission, vision, and values." (SMF ¶¶ 37-38), However, Spurlock and other witnesses testified that every deputy terminated from the sheriff's office necessarily failed to live up to the sheriff's "mission, vision, and values." (SMF ¶ 39), In the context of a termination at the DCSO, it is thus an essentially meaningless phrase, no better than "I don't want you to work here anymore" that fails to provide an employee with the actual reasons motivating the decision. As such, telling an employee only that they are being terminated for failure to live up to the "mission, vision, and values" is tantamount to termination without providing any "reason" as required by § 506. Here, Ms. Kluth followed up by asking Spurlock what it was that she had done or not done, and Spurlock refused to say. (SMF ¶ 38.) Under these circumstances, Ms. Kluth was also not provided with a meaningful "opportunity to be heard" prior to the termination.

[5] The resulting damages of such breach should be determined by a jury. *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 818 (Colo. App. 2003) ("Proof of actual damages is not an essential element of a breach of contract claim."); *see also* CJI-Civ. 30:10 (not including damages as an element of liability for breach of contract).

17

facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's affirmative defense") (citing *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (citations and quotations omitted).

In the Tenth Circuit, the burden is on the employer to establish its mitigation affirmative defense by a preponderance of the evidence, by showing that "(1) there were suitable positions which the claimants could have discovered and for which they were qualified, and (2) the claimants failed to use reasonable diligence in seeking such positions." *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1474 (10th Cir. 1993) (citing *EEOC v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir. 1980)). The employer is "required to satisfy *both* prongs of the above two-part test." *Id.* (emphasis in original); *see also McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1214 (10th Cir. 2000). As to the first element of the affirmative defense, "[t]he Tenth Circuit requires that employers prove not only the existence of suitable positions, but also the availability of those positions" and "some evidence that a plaintiff could obtain that position." *EEOC v. Beverage Distributors Co., LLC*, No. 11-CV-02557-CMA-CBS, 2013 WL 6458735, at *3 & nn.5-6 (D. Colo. Dec. 9, 2013), *aff'd in part, rev'd in part sub nom.*, 780 F.3d 1018 (10th Cir. 2015) (collecting cases).

Spurlock has failed to produce sufficient evidence to support his mitigation defense, because he failed to produce any evidence whatsoever in discovery about the existence and availability of any suitable positions which Ms. Kluth could have obtained. *See Wilson v. Union Pac. R.R. Co.*, 56 F.3d 1226, 1232 (10th Cir. 1995) (holding that plaintiff's failure to seek employment did not justify a mitigation instruction because "the defendant must also show that appropriate jobs were available"); *E.E.O.C. v. W. Trading Co.*, 291 F.R.D. 615, 620 (D. Colo.

2013) (mitigation affirmative defense failed as a matter of law where no evidence was presented at trial of suitable positions). Not only did Spurlock fail to disclose any evidence of suitable positions under Rule 26(a)(1), he also failed to provide any such evidence in response to Ms. Kluth's written discovery requests into the factual basis for his mitigation affirmative defense, and did not disclose any expert witness who could testify about any suitable positions. (SMF ¶¶ 45-48.) "Because [he] failed this prong of [his] burden, [Spurlock] has failed [his] burden of proof and evidence that supports the second prong of the test—*i.e.*, the individual mitigation efforts of [Ms. Kluth]—are simply irrelevant." *Aguinaga*, 993 F.2d at 1474; *see also Hayes v. SkyWest Airlines, Inc.*, 12 F.4th 1186, 1210 n.15 (10th Cir. 2021).

Summary judgment in Ms. Kluth's favor is therefore warranted on Spurlock's mitigation affirmative defense, because Spurlock "did not present sufficient evidence to create a triable issue of fact as to whether [Ms. Kluth] failed to mitigate [her] damages." *Huntz v. Elder*, No. 16-cv-1321-DME-CBS, 2017 WL 3914261, at *3 (D. Colo. Sept. 7, 2017) (Ebel, J.).

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in Ms. Kluth's favor on her breach of implied contract claim against Spurlock in his official capacity and should grant summary judgment to Ms. Kluth on the mitigation affirmative defense asserted by Spurlock in his individual and official capacities.

Respectfully Submitted,

/s Felipe Bohnet-Gomez
Felipe Bohnet-Gomez
Matthew J. Cron
RATHOD | MOHAMEDBHAI LLC
2701 Lawrence St., Suite 100
Denver, CO 80205
(303) 578-4400
fbg@rmlawyers.com
mc@rmlawyers.com

*Attorneys for Plaintiff*

20