**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-3417-NYW-MEH

HOLLY KLUTH,

    Plaintiff,

v.

TONY SPURLOCK,
Individually and in his official capacity as Douglas County Sheriff,

    Defendant.

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

---

Defendant Tony Spurlock, by and through counsel, responds to Plaintiff's Motion for Partial Summary Judgment [Doc. No. 33] ("Motion") as follows:

**INTRODUCTION**

The Douglas County Sheriff's Office ("DCSO") Policy and Procedure Manual clearly and conspicuously disclaims the creation of any contractual rights. Thus, the only rights considered binding on the DCSO are those set forth in C.R.S. § 30-10-506. Sheriff Spurlock fully complied with the dictates of the statute during his May 25, 2021 meeting with Plaintiff when he twice notified Plaintiff of the reason for her termination and gave her the opportunity to respond. Because the DCSO Policy and Procedure I-102 (Disciplinary/Corrective Action) grants deputies additional notice and procedures far beyond what is required by C.R.S. § 30-10-506, it does not effectuate the specific rights granted by the statute and is not an implied contract under Colorado law.

Even if Policy and Procedure I-102 were an implied contract, Sheriff Spurlock, in his official capacity as Plaintiff's former employer, may rescind the contract given his assertion of an after-acquired evidence defense in his Answer. Evidence discovered by the DCSO after Plaintiff's termination demonstrates that Plaintiff made material and intentional misstatements and omissions in her initial employment application materials with the DCSO.

With respect to Sheriff Spurlock's mitigation defense, the undisputed evidence demonstrates that Plaintiff made virtually no effort to secure employment after her termination from the DCSO. As such, a reasonable jury could conclude that Sheriff Spurlock has established his mitigation defense. For these reasons and those described below, Plaintiff's Motion should be denied.

**RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS ("RSOMF")**

1. Admit.
2. Admit.
3. Admit.
4. Admit.
5. Admit.
6. Admit.
7. Admit.
8. Admit that Sheriff Spurlock testified that for about the first five years as Undersheriff (from approximately 2014 to 2019), Plaintiff did an incredible job.[1] (Ex. 1, 104:16-18).

---

[1] Page 103 of Sheriff Spurlock's deposition transcript is missing from Plaintiff's Exhibit 1. It is included in Defendant's **Exhibit X**.

2

9. Admit.

## The DCSO's Disciplinary Policy

10. Admit.

11. Admit that Sheriff Spurlock testified the Disciplinary Policy, P&P-I-102 ("Disciplinary Policy") sets forth procedures to discipline employees. (Ex. 1, 219:24 – 220:2).

12. Admit.

13. It is admitted that the Disciplinary Policy is the only written policy in the DCSO's Policy and Procedure Manual that sets forth procedures to discipline employees.

14. Denied. The Disciplinary Policy does not effectuate the specific rights granted by C.R.S. § 30-10-506 because it grants deputies additional notice and procedures beyond what is required by the statute. (Ex. 2). *See* Statement of Additional Disputed Facts, ¶ 3.

15. Admit.

16. Admit.

17. Admit that the Disciplinary Policy provides that "Discipline is finalized only after the employee has had an opportunity to reply to the charges, and present mitigating information." (Ex. 2, VII.B.2).

18. Admit.

19. Admit.

20. Admit that the Disciplinary Policy provides that "the disciplinary action letter…shall also contain a statement citing the reason(s) for demotion or termination." (Ex. 2, VII.B.6.).

3

21. Admit that the Disciplinary Policy provides that if "an executive officer demotes or terminates an employee, the date the demotion or termination is to take effect shall be stated in the disciplinary action letter provided to the affected employee by the executive officer. (The date shall be no earlier than one (1) business day past the five business days that the member has to file an appeal.)". (Ex. 2, VII.B.6.).

22. Admit that the Disciplinary Policy provides that employees "may appeal a 2-year letter of reprimand as well as restitution, probation, pay status freeze and/or reduction, suspension, demotion or termination..." and that the appeal "must be in writing and must be received by the Office of Professional Standards within five (5) business days of the date of the discipline." (Ex. 2, VIII.D).

23. Admit that the Disciplinary Policy provides that "Sanctions will not be imposed until the employee waives appeal or after the appeal deadline, whichever comes first." (Ex. 2, VII.B.6.).

24. Denied. The Disciplinary Policy imposes a number of obligations on DCSO employees. (Ex 2, VIII.B. - E.1.).

## Ms. Kluth's Termination

25. Admit that Plaintiff informed Sheriff Spurlock "around February 6" [2021] that she would be running for Douglas County Sheriff (Ex. 6, 102:7-12). However, Sheriff Spurlock knew as early as the summer of 2020 that Plaintiff was considering running for Douglas County Sheriff. (**Ex. W**, Kluth Dep. at 104:21 – 105:9; **Ex. X**, Spurlock Dep. at 151:14 – 152:10).

26. Admit.

4

27. Admit that Plaintiff was transferred to the Detentions Division on or about February 23, 2021. (Ex. 7, 77:10-12).

28. Admit that Kevin Duffy testified Plaintiff's transfer to Detentions showed him that "the sheriff and the undersheriff had confidence in Nicholson-Kluth to take on that very, very demanding role." (Ex. 7, 78:11 – 14). Sheriff Spurlock testified that Plaintiff was transferred to Detentions for a number of reasons including the termination of another Captain (James Jensen) and the departure of the Arapahoe County Sheriff's Office from the Highlands Ranch Law Enforcement Training Academy, which left a leadership void prompting Sheriff Spurlock to move Captain Tim Moore to the Academy and the "domino effect" created as a result. (**Ex. X**, Spurlock Dep. at 265:25 – 266:12).

29. Admit that Kevin Duffy testified "it's an honor to be selected for that critical assignment." (Ex. 7, 79:6 – 8). Kevin Duffy further testified that Plaintiff "would fit better as a captain in that division because she was once a chief over that division, understanding that division versus being a captain on patrol, which she had not had a lot of experience in." (Ex. 7, 79:13 - 18).[2]

30. Admit.

31. Denied. In response to counsel's question whether there were "any major incidents" while Plaintiff was a Captain in the Detentions Division, Sheriff Spurlock testified: "Not that rises – not that anything that comes to mind." (Ex. 1, 265:2-5). Sheriff Spurlock subsequently testified that during Plaintiff's tenure as Detentions Captain, she behaved in an unprofessional manner, interfered with Chief Steve Johnson's decision to transfer/move personnel, failed to rise to the

---

[2] Plaintiff has characterized her transfer to Detentions as a demotion and the Detentions Captain position as "a less desirable position." *See* Complaint, ¶¶ 19, 87.

occasion and failed to step up, work together, and fulfill the mission of the DCSO. (**Ex. X**, Spurlock Dep. at 267:17 – 268:11, 272:15 – 273:18).

32. Admit.

33. Denied that Sheriff Spurlock decided that Plaintiff needed to be terminated without "following the Disciplinary Policy's procedures." Admit that Sheriff Spurlock "thought it was best for the agency to separate immediately." (Ex. 1, 274:18-22).

34. Admit that Sheriff Spurlock agreed that Plaintiff's termination "did not directly follow the procedures" of the Disciplinary Policy. (Ex. 1, 227:3-6). Admit that Sheriff Spurlock "thought it was best for the agency to separate immediately." (Ex. 1, 274:18-22).

35. Admit that the May 25, 2021 meeting did not constitute a pre-disciplinary hearing as discussed in the Disciplinary Policy. (Ex. 1, 223:11-224:9). Admit that during the May 25, 2021 meeting with Plaintiff, Sheriff Spurlock twice notified Plaintiff of the reason for her termination and gave her the opportunity to respond. *See* RSOMF, ¶¶ 37, 38.

36. Admit that Sheriff Spurlock believes Plaintiff did not have advance notice that the May 25, 2021 meeting related to her termination. (Ex. 1, 205:9-14).

37. Admit that Sheriff Spurlock advised Plaintiff that nothing had changed since last fall and twice advised Plaintiff that she was no longer meeting the vision, mission and values of the DCSO. Admit that Plaintiff's behavior had not changed since the fall of 2020 with respect to Plaintiff's violation of DCSO policies and continuing failure to meet the vision, mission, and values of the DCSO. (Ex. 1, 203:4 – 204:4; Ex. 6, 167:2-14)(**Ex. X**, Spurlock Dep. at 213:16 – 214:17).

38. Admit that in response to Plaintiff's inquiry, Sheriff Spurlock advised that she was not meeting the vision, mission and values of the DCSO.[3] (Ex. 8, 63:17-22).

39. Admit.

40. Admit.

41. Admit.

42. Admit. However, Plaintiff knew she could appeal pursuant to the Disciplinary Policy. (**Ex. W**, Kluth Dep. at 194:8 – 10).[4]

43. Denied. Plaintiff's citations to Exhibits 8 and 9 do not support the facts alleged at Paragraph 43.

44. Denied. Tim Moore's termination did not directly follow the procedures of the Disciplinary Policy. (Ex. 1, 229:8 – 19). *See* RSOMF, ¶ 34.

**Facts Relating to Defendant's Mitigation Affirmative Defense**

45. Admit.

46. Admit.

47. Admit.

48. Admit.

49. Admit.

---

[3] Page 210 of Sheriff Spurlock's deposition transcript is missing from Plaintiff's Exhibit 1. It is included in Defendant's **Exhibit X**.

[4] Page 194 of Plaintiff's deposition transcript is missing from Plaintiff's Exhibit 6. It is included in Defendant's **Exhibit W**.

## STATEMENT OF ADDITIONAL DISPUTED FACTS ("SOADF")

**DCSO Policy & Procedure A-101: Manuals and Authority**

1. DCSO P&P-A-101, I. (Manuals) states

The Policies and Procedures set forth in this manual are for the guidance and direction of all Douglas County Sheriff's office members. Additional procedure manuals (Division SOPs and the Sheriff's Office GOPs) will supplement and augment this manual and will be specific to office responsibilities. **These guidelines are not intended to create, nor should they be construed to create a contract between the Sheriff's Office and its employees / officials.** Employment with the County and Sheriff's Office is at will. Employees may leave employment with Douglas County at any time and for any reason, and the Sheriff retains an identical right. (emphasis added).

(Defendant's Motion for Summary Judgment, Ex. S, p. 1).

**DCSO Policy & Procedure I-102: Disciplinary/Corrective Action**

2. DCSO P&P-I-102 describes the entire corrective action/disciplinary process at the DCSO, not solely termination. (Exhibit 2).[5]

3. DCSO P&P-I-102 provides additional notice and procedures beyond what C.R.S. § 30-10-506 requires as it contemplates:

- verbal or written statements from witnesses;
- potential live witness testimony;
- audio recording;
- notification that Douglas County Human Resources will contact employees regarding fringe and retirement benefits.

(Exhibit 2, VII.B.1-7).

---

[5] DCSO P&P-I-102 states: "Employment with the County and the Sheriff's Office is at will."

**Plaintiff's Termination**

4.     Plaintiff waived post termination appeal procedures by failing to file an appeal of her May 25, 2021 termination. (Ex 9, rog 17 at 5-6).

**Plaintiff's Post-Termination Job Search Efforts**

5.     Plaintiff's job search efforts consisted of "looking at LinkedIn boards at Arapahoe Works! and Arapahoe public posting boards, Arapahoe/Douglas Works!" and applying for a total of three jobs over the seven-month period between her termination and the end of calendar year 2021. (**Ex. W**, Kluth Dep. at 221:9 – 223:12).

6.     Plaintiff applied for a job at Metro State College as an instructor and two security related jobs. (**Ex. W**, Kluth Dep. at 221: 6 – 223:14).

7.     Plaintiff did not interview for any of the three jobs for which she applied. (**Ex. W**, Kluth Dep. at 223:8 – 14).

8.     In late January/early February 2022, Plaintiff's campaign for Douglas County Sheriff became full-time so she stopped applying for work and began collecting unemployment insurance. (**Ex. W**, Kluth Dep. at 222:25 – 223:7)

**Sheriff Spurlock's after-acquired evidence defense**

9.     Sheriff Spurlock asserted an after-acquired evidence defense in his Answer. [Doc. 13, p. 18, ¶ 19].

10.    Evidence discovered by the DCSO after Plaintiff's termination revealed that while Plaintiff was serving as Undersheriff, she ordered a subordinate to delete some of her personnel records, which would be disparaging to her reputation and campaign for Douglas County Sheriff,

from the DCSO's Guardian Tracker/Tracking database.[6] (**Ex. Y**, DCSO 967-973 – Notification of Findings).

11. The Internal Affairs ("IA") investigation of Plaintiff's actions determined that the deleted records included Plaintiff's Personal History Questionnaire (PHQ/Employment Application), Background Investigation, Polygraph Examination, Psychological Evaluation, all of which were completed as part of her application process at the DCSO, and documents related to a domestic violence/felony menacing incident in Park County, Colorado with her former husband which occurred some five months before she was hired by the DCSO. (**Ex. Y**, DCSO at 969 – 970).

12. The IA investigation further determined that Plaintiff committed additional deceptive acts during her application process at the DCSO. Specifically, Plaintiff indicated on her PHQ/Employment Action that she worked for the Arapahoe County Sheriff's Office when in fact she worked for the Arapahoe Community Treatment Center which is not affiliated with the Sheriff's Office. (**Ex. Y**, DCSO at 969 – 970). Plaintiff also omitted from her PHQ/Employment Application the domestic violence/felony menacing incident with her former husband. (**Ex. Y**, DCSO at 969 – 970).

13. At the conclusion of the IA investigation, Plaintiff was found to have violated multiple DCSO Policies and Procedures including Commission of a Deceptive Act. (**Ex. Y**).

---

[6]   Guardian Tracker/Tracking is an electronic database that contains personnel files, personal action forms, certain disciplinary actions and training certificates. (**Ex. X**, Spurlock Dep. at 33:9-15).

## ARGUMENT

**I. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HER IMPLIED CONTRACT CLAIM**

***Cummings I, Cummings II* and DCSO's Policies and Procedures**

In *Cummings v. Arapahoe County Sheriff's Department*, 440 P.3d 1179, 1183, 2018 COA 136, ¶ 6 (*Cummings I*), the Court held that C.R.S. § 30-10-506 "grants two unwaivable rights to the deputies, the right of notification 'of the reason for the proposed revocation' of their employment, and an 'opportunity to be heard by the sheriff' before their employment is terminated." The Court further held that sheriffs must adopt personnel policies, all of which may be nonbinding except for the two rights provided for in C.R.S. § 30-10-506. *Id*. "To summarize, the amended statute requires a sheriff to promulgate written employment policies. The sheriff must give his deputies the rights of notice and opportunity to be heard. Other employment policies promulgated by the sheriff may be, but are not required to be, binding. And if the sheriff elects to confer binding employment rights on his deputies, those rights are enforceable in accordance with their terms." *Id*. at 1185.

Exercising its authority to promulgate nonbinding employment policies under *Cummings I*, the DCSO's Policy and Procedure Manual clearly and conspicuously disclaims the creation of any contractual rights. (SOADF, ¶ 1 - DCSO P&P-A-101, I: "These guidelines are not intended to create, nor should they be construed to create a contract between the Sheriff's Office and its employees /officials."). Thus, the only rights considered binding on the DCSO are those set forth in C.R.S. § 30-10-506: the right of "notification of the reason for the proposed revocation of their employment," and "an opportunity to be heard by the sheriff before their employment is terminated." Sheriff Spurlock fully complied with the dictates of the statute during his May 25,

2021 meeting with Plaintiff when he twice notified Plaintiff of the reason for her termination and gave her the opportunity to respond. (RSOMF, ¶ 37). *See Cummings v. Brown*, 500 P.3d 1140, 2021 COA 122, ¶ 24 (*Cummings II*)("[T]he statute does not require sheriffs to provide robust notice at all phases of a sheriff's internal disciplinary process; it merely requires that sheriffs — when they intend to revoke a deputy's appointment — notify the deputy of the reasons for that 'proposed revocation' and provide the deputy an opportunity to be heard.").[7]

Plaintiff's argument that DCSO P&P-I-102 ("the Disciplinary Policy") cannot be disclaimed because it effectuates the due process rights set forth in C.R.S. § 30-10-506 (Motion, pp. 10 – 11) ignores not only the broad scope of the Disciplinary Policy and *Cummings I* but also *Cummings II*. The relevant issue in *Cummings II* was whether the trial court erred in instructing the jury whether the defendant sheriff complied with a specific section of the sheriff office's policy and procedure manual in determining the office's alleged breach of its implied contract with the plaintiff. The Court found that the relevant section of the manual did not effectuate the specific rights granted by C.R.S. § 30-10-506. Rather, the section granted deputies "<u>additional notice beyond what section 30-10-506 requires and under *Cummings I*, the Sheriff could (and did) disclaim that this notice created any contractual right</u>." (emphasis added) *Id.* at ¶ 23.

DCSO's Disciplinary Policy is not limited to imposition of discipline. Rather, it describes the entire corrective action/disciplinary process at the DCSO including "Grounds for Disciplinary Action or Dismissal," "Disciplinary Action Ranges," "Corrective Action Ranges,"

---

[7] Plaintiff has failed to show how the May 25, 2021 meeting with Sheriff Spurlock was not sufficient notice and opportunity to be heard. Plaintiff fails to cite any relevant authority in support of her contention that she was not provided with "a meaningful 'opportunity to be heard' prior to the termination." (Motion, p. 17, n. 4).

"Administrative Leave Pending Investigation Outcome," "Disciplinary Authority of Supervisors" and "Appeal Procedures." (Ex. 2, 1-2).[8] Because the "Imposing Discipline" section contemplates verbal or written statements from witnesses, the potential for live witness testimony, the audio recording of hearings, and Human Resources notification regarding fringe and retirement benefits, the Policy grants deputies additional notice and procedures far beyond what is required by § 30-10-506. *See Cummings II*, 2021 COA 122, ¶ 23. Accordingly, and given the clear and conspicuous disclaimer of any contractual rights in DCSO P&P-A-101, the Policy is not an implied contract under Colorado law and Plaintiff's Motion for Partial Summary Judgment should be denied.[9]

**After-acquired evidence defense**

Although Sheriff Spurlock did not move for summary judgment on this defense, it is germane to the analysis because it generates additional issues of fact sufficient to defeat Plaintiff's Motion on her implied contract claim.

In *Crawford Rehab. Servs. v. Weissman*, 938 P.2d 540 (Colo. 1997), the plaintiff brought implied contract and promissory estoppel claims against her former employer based on the employer's alleged failure to follow termination procedures in an employment manual. The Colorado Supreme Court reversed the Court of Appeals' reversal of the trial court's dismissal of the plaintiff's implied contract and promissory estoppel claims based on the after acquired

---

[8] Plaintiff's recognition that the Disciplinary Policy provides an opportunity to be heard through the submission of a post-discipline appeal (Motion, p. 14) is puzzling because it is undisputed that she failed to file an appeal of her termination. (SOADF, ¶ 4). In response to Plaintiff's counsel's question whether he would have changed his mind had Plaintiff appealed, Sheriff Spurlock testified: "I don't know. I – she never appealed. So I don't know." (**Ex. X**, Spurlock Dep. at 275:9-15).

[9] Plaintiff has failed to present any evidence of damages caused by the DCSO's alleged failure to follow all provisions of the Disciplinary Policy.

evidence doctrine and other grounds. *Id*. at 543. The Court concluded that the doctrine provided a complete defense to implied contract and promissory estoppel claims because of certain material and intentional misstatements and omissions in the plaintiff's employment application. *Id*. at 549.

The Court explained:

> Basic principles of law and equity support a rule allowing an employer to avoid liability for breach of implied contract or promissory estoppel claims arising from an employment relationship induced by an employee's fraud. A party that has been fraudulently induced to enter into a contract may rescind the contract to restore the status quo. See Restatement (Second) of Contracts § 164 (1981). <u>Applying that axiom, an employer that has been fraudulently induced to hire an employee may rescind the employment agreement. Here, the only agreement that existed was the one contained in the employment manual concerning termination procedures. Hence, the employer is entitled to rescind the implied contract to adhere to the termination procedures contained in the employment manual, and cannot be held liable under a theory of breach of implied contract for failure to adhere to such procedures</u>. (emphasis added)(citations omitted).

*Id*. at 547 – 548.

Evidence discovered by the DCSO after Plaintiff's termination revealed that while Plaintiff was serving as Undersheriff, she ordered a subordinate to delete some of her personnel records from the DCSO's electronic database. (SOADF, ¶ 10). The IA investigation of Plaintiff's actions determined that the deleted records included her Personal History Questionnaire (PHQ/Employment Application) and Background Investigation, all of which were completed as part of her application process at the DCSO, and documents related to her involvement in a domestic violence/felony menacing incident with her former husband. (SOADF, ¶ 11). The IA investigation further determined that Plaintiff committed additional deceptive acts during her application process at the DCSO. Specifically, Plaintiff falsely stated on her PHQ/Employment Action that she worked for the Arapahoe County Sheriff's Office when in fact she worked for the Arapahoe Community Treatment Center and omitted from the same document the domestic

14

violence/felony menacing incident. (SOADF, ¶ 12). At the conclusion of the IA investigation, Plaintiff was found to have violated multiple DCSO Policies and Procedures including Commission of a Deceptive Act. (SOADF, ¶ 13).

Like the implied contact claim at issue in *Crawford Rehab. Servs.*, Plaintiff's implied contract claim is based on her former employer's alleged violations of termination procedures. Like the evidence of resume fraud at issue in *Crawford Rehab. Servs.*, the evidence discovered by the DCSO demonstrates that Plaintiff made material and intentional misstatements and omissions in her DCSO employment application materials. Thus, Sheriff Spurlock, in his official capacity as Plaintiff's former employer, may rescind the alleged implied contract pursuant to *Crawford Rehab. Servs*. At a minimum, genuine issues of material fact relative to Sheriff Spurlock's after-acquired evidence defense preclude summary judgment in Plaintiff's favor on her implied contact claim. Accordingly, Plaintiff's Motion for Partial Summary Judgment should be denied.

## II. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON SHERIFF SPURLOCK'S MITIGATION AFFIRMATIVE DEFENSE

An employer may meet its burden to establish its mitigation defense by demonstrating that the plaintiff made no effort to secure employment. *See e.g., Sanchez v. Mora-San Miguel Elec. Coop., Inc.*, No. 98-2061, 1999 U.S. App. LEXIS 5887, *21 *22 (10th Cir. March 31, 1999)(finding that defendants met their burden of proof on mitigation defense where plaintiff's efforts to find work over a 12 month period consisted of making four phone calls and giving her resume to the New Mexico Department of Labor for forwarding to a private company); *Hale v. Emporia State Univ.*, No. 16-4182-DDC, 2020 U.S. Dist. LEXIS 154852, *19 (D. Kan. August 26, 2020)(finding that defendant could have discharged its burden had the plaintiff made no effort to secure

15

alternative employment);[10] *Logan v. Pena*, No. 91-2389-JWL, 1993 U.S. Dist. LEXIS 2916, at *3 (D. Kan. Feb. 9, 1993)("When a discriminatee makes little or no effort to obtain any type of employment, the court does not need to consider in the abstract whether or not a suitable position for which the plaintiff is qualified might have been offered to the discriminatee if he or she had made the necessary effort to find it." (citations omitted)).[11]

Plaintiff holds Bachelor's and Master's degrees and had some 32 years in law enforcement experience at the time of her May 25, 2021 termination. During her service as a law enforcement officer for the DCSO, she graduated from the FBI National Academy, served on various Boards and committees and received multiple awards. (**Ex. Z**, KLUTH 1536-538 – Plaintiff's resume). Despite her lengthy experience and qualifications, the entirety of Plaintiff's job search efforts consisted of looking at a few job boards and applying for three jobs. (SOADF, ¶¶ 5-6).[12] In late

---

[10]   The court concluded that defendant had not met its burden because plaintiff applied for over 40 jobs over the course of the 12 months following her employment separation.

[11]   Courts outside of this Circuit have reached the same result. *See e.g., Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 16 (1st Cir. 1999) ("Other courts of appeals . . . uniformly have relieved the defendant-employer of the burden to prove the availability of substantially equivalent jobs in the relevant geographic area once it has been shown that the former employee made no effort to secure suitable employment."); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2nd Cir. 1998)(adopting the rule that an employer is "released from the duty to establish the availability of comparable employment if it can prove that the employee made no reasonable efforts to seek such employment."); *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1527 (11th Cir. 1991)(If "an employer proves that the employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially comparable employment."); *Sellers v. Delgado College*, 839 F.2d 1132,1139 (5th Cir. 1988)("If an employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially comparable employment.")

[12]   Plaintiff testified she started taking real estate courses in the fall of 2021 and passed her real estate exam the beginning of June 2022. (**Ex. W**, Kluth Dep. at 223: 15 – 25).

January/early February 2022, Plaintiff's campaign for Douglas County Sheriff became full-time so she stopped applying for work and began collecting unemployment insurance. (SOADF, ¶ 8).[13]

Because the undisputed evidence demonstrates that Plaintiff, despite reputable credentials and three decades of experience, made virtually no effort to secure employment after her termination from the DCSO, a reasonable jury could conclude that Sheriff Spurlock has established his mitigation defense. Accordingly, Plaintiff's Motion for Partial Summary Judgment on Sheriff Spurlock's mitigation defense should be denied.

## **CONCLUSION**

For the reasons described above, Plaintiff's Motion for Partial Summary Judgment should be denied.

Dated this 21st day of December 2022.

Respectfully submitted,

*s/ William T. O'Connell, III*
William T. O'Connell, III
Saugat K. Thapa
WELLS, ANDERSON & RACE, LLC
1700 Broadway, Suite 900
Denver, CO  80290
Telephone: 303-830-1212
Email: woconnell@warllc.com; sthapa@warllc.com

**ATTORNEYS FOR DEFENDANT TONY SPURLOCK**

---

[13] Plaintiff was one of four Republican candidates running for Douglas County Sheriff. She finished third in the June 2022 primary accumulating 18% of the vote. https://www.douglas.co.us/documents/2022-primary-election-results.pdf

## CERTIFICATE OF SERVICE

  I hereby certify that on December 21, 2022, a true and correct copy of the above and foregoing **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** was electronically filed with the Clerk of Court using the CM/ECF system and/or sent via e-mail to the following e-mail addresses:

Felipe Bohnet-Gomez, Esq.
Matthew J. Cron, Esq.
**RATHOD MOHAMEDBHAI LLC**
2701 Lawrence Street, Suite 100
Denver, CO  80205
*fbg@rmlawyers.com*
*mc@rmlawyers.com*
**Attorneys for Plaintiff**

              *s/ Barbara McCall*
              Barbara McCall, Legal Assistant