1IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-3417-NYW-MEH

HOLLY KLUTH,

    Plaintiff,

v.

TONY SPURLOCK, individually, and in his official capacity as Douglas County Sheriff,

    Defendants.

---

**Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment**

---

The Court should grant summary judgment to Ms. Kluth on her breach of implied contract claim and on Spurlock's mitigation affirmative defense.

Spurlock's argument that the Disciplinary Policy provisions applicable to Ms. Kluth's termination are not binding rests on a misreading of *Cummings I* and *II*. As those cases make clear, it is the employment policies themselves—not the statutory text of C.R.S. § 30-10-506—that forms the relevant implied contract. And that is the case even if those policies effectuate the statutory rights by providing additional procedural rules not found in the statute itself.

The after-acquired evidence defense raised by Spurlock relies on *Crawford*, which applies only to resume fraud in private contract cases that do not implicate any public policy concerns. As such, it does not apply to Ms. Kluth's implied contract claim, because her claim is not a private contract—it is instead expressly based on the public policy of the state as expressed in its statutes. In any case, Spurlock has failed to muster sufficient evidence of resume fraud to preclude summary judgment. The only relevant evidence of resume fraud is a trivial alleged

misrepresentation of the name of a prior employer in an employment application Ms. Kluth submitted over thirty years ago, in 1988—an employment application which Spurlock never looked at or considered until after he fired Ms. Kluth.

Ultimately, there is no genuine dispute of material fact that Ms. Kluth's termination violated the DCSO policies that effectuated her statutory due process rights, and she is therefore entitled to summary judgment on her breach of implied contract claim.

Likewise, Spurlock's attempts to defeat summary judgment on his mitigation defense fare no better. He relies on an exception to his burden of proof for the defense—but it is an exception has not been adopted by the Tenth Circuit. And even if it had, it would not apply on the facts of this case, because it is undisputed that Ms. Kluth made at least some effort to find work. The Court should therefore grant summary judgment to Ms. Kluth on the mitigation defense.

## REPLY CONCERNING UNDISPUTED MATERIAL FACTS

8. Defendant does not deny this fact and it is therefore admitted. *See* Civ. Practice Standard 7.1D(b)(4) ("Any party opposing the motion for summary judgment shall . . . admit or deny the movant's asserted material facts.")

11. Defendant does not deny this fact and it is therefore admitted.

13. Defendant does not deny this fact and it is therefore admitted.

14. The Disciplinary Policy does effectuate the § 506 rights because, as admitted in Defendant's response to undisputed fact no. 13, the Disciplinary Policy is the only DCSO policy that addresses deputies' rights to notice and opportunity to be heard regarding their termination.

17. Defendant does not deny this fact and it is therefore admitted.

20. Defendant does not deny this fact and it is therefore admitted.

21. Defendant does not deny this fact and it is therefore admitted.

22. Defendant does not deny this fact and it is therefore admitted.

23. Defendant does not deny this fact and it is therefore admitted.

24. Defendant cites to the portion of the Disciplinary Policy setting forth appeal procedures. But Defendant has not cited any portion of the record establishing that employees are required to appeal, nor any other evidence of an employee's obligations under the Disciplinary Policy. As such, the fact is not genuinely disputed.

25. Defendant does not deny this fact and it is therefore admitted.

27. Defendant does not deny this fact and it is therefore admitted.

28. Defendant does not deny this fact and it is therefore admitted. In addition, Kevin Duffy was the DCSO's Rule 30(b)(6) designee on the topic of Ms. Kluth's transfer.

29. Defendant does not deny this fact and it is therefore admitted. In addition, Kevin Duffy was the DCSO's Rule 30(b)(6) designee on the topic of Ms. Kluth's transfer.

31. Plaintiff's asserted fact was that there were "no major performance issues" during the time Ms. Kluth was Detentions Captain, and the evidence on that point is uncontroverted. Additionally, Spurlock testified that, although "it wasn't anything negative," "it just seemed like" Ms. Kluth was not "stepping up, and working together, and trying to fulfill the mission of the Office" but admitted that was just a "sense" he had and could not point to any specific failing on her part. (Ex. 15, Spurlock Dep. 272:15-273:18.)

33. Defendant cannot genuinely dispute this fact. Spurlock was squarely asked whether he "decided that [Ms. Kluth] needed to be terminated without going through the procedures of the corrective action policy in Exhibit 16," *i.e.*, the DCSO's Disciplinary Policy, to which he answered "Yeah." (Ex. 1, Spurlock Dep. 274:18-22.)

34. Defendant does not deny this fact and it is therefore admitted.

35. Defendant does not deny this fact and it is therefore admitted.

36. Defendant does not deny this fact and it is therefore admitted.

37. Defendant does not deny this fact and it is therefore admitted.

38. Defendant does not deny this fact and it is therefore admitted.

42. Defendant does not deny this fact and it is therefore admitted.

43. This fact is properly supported and is uncontroverted. Ms. Leary's testimony supports the assertion that Ms. Kluth did not waive her appeal rights at the May 25, 2021 meeting, because Ms. Leary was present at the meeting and did not recall any discussion of an appeal. Defendant's interrogatory response provides support as well, because it states that "Plaintiff was afforded post-termination appeal procedures *which she waived by failing to file an appeal of her termination*." (Ex. 9, Defendant's Response to Plaintiff's Second Set of Interrogatories, at 5-6 (Response to Interrogatory No. 17)) (emphasis added). As such, Defendant's own position is that any waiver of Ms. Kluth's appeal rights occurred when she failed to file an appeal (after any purported appeal period had run) and not at the May 25, 2021 meeting (before any appeal period even began).

44. This fact is uncontroverted because Ms. Kluth's termination preceded Mr. Moore's. (Ex. 16, Leary Tr. 65:21-66:20.) It is undisputed that Spurlock also terminated Mr. Moore—with whom Ms. Kluth had engaged in political activity in the Fall of 2020—without following the Disciplinary Policy, immediately after terminating Ms. Kluth. But at the time Ms. Kluth was terminated, the only other terminations that had not followed the Disciplinary Policy were the terminations of a murderer and a rapist.

### RESPONSE CONCERNING DISPUTED FACTS

1. It is undisputed that the policy manual contains the quoted provision.

2. It is undisputed that the Disciplinary Policy does not solely describe termination procedures.

3. Disputed. The cited portions of the policy also "effectuate the specific due process rights granted by section 30-10-506" because they set forth "policies addressing the form [and] timing of the notice of the proposed revocation," as well as "procedural rules concerning the termination hearing." *Cummings v. Brown,* 2021 COA 122, ¶ 25, 500 P.3d 1140, 1146.

4. It is undisputed that Ms. Kluth did not file an appeal of her termination with Spurlock. But it is disputed that Ms. Kluth was provided any right to appeal that could be "waived," since Spurlock terminated her effective immediately, (SMF ¶ 41), in contravention to the appeal procedures Spurlock claims Ms. Kluth could have relied on. (Ex. 2, Disciplinary Policy, at p. 5, § VIII(E)(2) ("Sanctions will not be imposed until the employee waives appeal or after the appeal deadline, whichever comes first.")).

5. Disputed. The cited deposition testimony does not establish the extent of Ms. Kluth's efforts to search for suitable work. It establishes only that she applied for three positions. Ms. Kluth's own records, which were produced in discovery, evidence substantial job search efforts. (Ex. 17, Work Search History.)

6. Undisputed.

7. Undisputed. However, the implication that it was Ms. Kluth's decision to not interview for the positions is disputed. Ms. Kluth testified that those potential employers "never called me back." (Ex. W, Kluth Dep. 223:13-14.)

8. Disputed. Ms. Kluth testified that she stopped collecting unemployment insurance at this time—not that she began doing so. (Ex. W, Kluth Dep. 223:4-7.)

9. Undisputed.

10. Disputed. Ms. Kluth denies order the subordinate—Robert McMahan—to delete any records. (Ex. 18, Kluth Dep. 230:16-232:25.) In any case, anyone who understood how the

records bureau worked would have also understood that paper copies of the electronic records would be retained, and McMahan contemporaneously informed Spurlock of the purported records deletion, and Spurlock took no action. (Ex. 19, McMahan Dep. 79:1-80:1).

11. It is undisputed that Defendant's IA investigation purported to make these determinations. However, as described in Ms. Kluth's response to nos. 10 and 12, the underlying facts of the purported records deletion are disputed.

12. Disputed. As Defendant's IA investigator Philip Domenico testified, in her 1988 job application to the DCSO, Ms. Kluth provided the correct job title, description of duties, dates of employment address, and supervisor name and contact information for the prior position that Spurlock alleges she misrepresented. (Ex. 20, Domenico Dep. 59:3-60:19.) Defendant's conclusion that Ms. Kluth was "deceptive" is based solely on the fact that the name of the employer she provided was "Arapahoe County Sheriffs Dept Community Corrections," which presently is not affiliated with the sheriff's office and is now called "Arapahoe Community Treatment Center." (Ex. 20, Domenico Dep. 60:20-25; Ex. 21, Selection from Employment Application) However, Defendant's investigation did not consider or determine what the community corrections facility where Ms. Kluth has worked was called at the time, in 1988, or whether it was affiliated with the Arapahoe County Sheriff's Office. (Ex. 20, Domenico Dep. 60:25-62:8, 63:1-22.) Additionally, at the time Ms. Kluth was hired, the DCSO in fact had the relevant information about the purported incident with Ms. Kluth's former husband that Spurlock asserts was omitted from her employment application. (Ex. 20, Domenico Dep. 71:9-71:24.) Further, it is undisputed that Spurlock never looked at Ms. Kluth's personnel file until after her termination. (Ex. 15, Spurlock Dep. 286:25-287:10.) And it is also undisputed that Spurlock

6

selected Ms. Kluth to be Undersheriff because he personally knew that she could do projects very well. (Ex. 15, Spurlock Dep. 71:16-72:12; 93:1-21.)

13.     It is undisputed that Defendant's IA investigation purported to conclude that Ms. Kluth violated DCSO policies. However, as described above in response to nos. 10 and 12, the underlying facts are disputed.

## ARGUMENT

### I.    The DCSO's termination policies were a binding implied contract that Spurlock undisputedly breached.

In response to Ms. Kluth's implied contract argument, Spurlock contends (at 11-12), that "the only rights considered binding on the DCSO are those set forth in C.R.S. § 30-10-506" and that because "Spurlock fully complied with the dictates of **the statute** during his May 25, 2021 meeting with Plaintiff," Ms. Kluth's breach of implied contract claim fails.[1] Spurlock further argues (at 12-13) that the DCSO's disciplinary policy could be disclaimed in its entirety because it "is not limited to the imposition of discipline" and "grants deputies additional notice and procedures far beyond what is required by § 30-10-506." But Spurlock misreads *Cummings I* and *Cummings II*, and his argument is wrong for two principal reasons: First, the content of the relevant implied contract is not merely "the dictates of the statute," as Spurlock claims (at 11), but the "dictates" of the **policies** that effectuate or enforce the statutory rights. Second, policies that effectuate the § 506 rights—and which therefore are binding—are not limited in their scope to the bare statutory language but also include policies that enforce and give effect to the statutory rights in ways not necessarily required by the statutory language itself.

---

[1] Spurlock did not comply with the statute, either, because she was not given a meaningful reason for her termination, since it is undisputed that the "reason" Spurlock gave—failure to meet the "mission vision and values" of the sheriff's office—definitionally applies to every single termination. (SMF ¶ 39.)

7

*Cummings I* explicitly held that a plaintiff may "pursue an implied contract claim **based on rights conferred in the Manual** that effectuate the due process rights granted by section 30-10-506." 440 P.3d at 1190 (emphasis added). In other words, "[t]o the extent the Manual enforces these statutory rights, **the Manual** may form the basis of an implied contract claim." *Id.* at 1187. As such, it is the language of the DCSO's policies—not the language of § 506 itself—that is the relevant text from which the implied contract is formed. This distinction is made clear by Judge Bernard's special concurrence in *Cummings I*, which, unlike the majority opinion, would have concluded that **any** policies adopted by a sheriff "are discretionary rather than mandatory" and that "section 506 bars the deputy's claim in this case that the sheriff's employment policies, as embodied in the policy manual, created an implied employment contract." *Id.* at 1193 (internal quotation omitted). Judge Bernard would instead have concluded that a deputy could pursue a claim "**only to the extent** that section 506 created two specific statutory rights"—in other words, that there were "two exceptions and to two exceptions only" to at-will employment for sheriff's deputies—those in the statute itself. *Id.* at 1191, 1193 (emphasis in original). But Judge Bernard's reasoning, which parallels that of Spurlock's response, was not adopted by the majority in *Cummings I*, which instead held that it is the policies themselves—to the extent they "effectuate" or "enforce" the § 506 rights—that form the basis of an implied contract. Here, the relevant policies that do so are the portions of the Disciplinary Policy identified by Ms. Kluth. (SMF ¶¶ 15-21.) It is undisputed that these are the only employment policies at the DCSO that can be said to "effectuate" or "enforce" the § 506 rights, (SMF ¶ 13), and it is undisputed that Ms. Kluth's termination did not comply with **those policies**, (SMF ¶ 34).

The fact that the relevant policies in the DCSO's Disciplinary Policy provide form and content to the § 506 rights "beyond what is required by § 30-10-506" does not make them precatory or disclaimable, as Spurlock contends (at 13).[2] As *Cummings II* made clear, a sheriff can "promulgate[] additional policies that effectuate the specific due process rights granted by section 30-10-506"—and are therefore binding—"including (but not limited to) policies addressing the form or timing of the notice of the proposed revocation or procedural rules concerning the termination hearing." 500 P.3d at 1146. Indeed, the policy at issue in *Cummings II* was the sheriff's internal investigations policy, which, because it "deal[t] exclusively with notice of an investigation, d[id] not effectuate the **specific** notice right granted by the statute," namely notice of a termination. *Id.* (emphasis in original). The court explained that, since "an **investigation** into alleged misconduct . . . may or may not result in disciplinary action, let alone termination," the policy "grant[ed] deputies **additional** notice beyond what section 30-10-506 requires." *Id.* (emphasis in original). Thus, the relevant question in determining whether a policy is binding is not whether it provides more procedures than the language of § 506 itself—it is whether the subject matter of the policy addresses the specific due process rights of § 506. If the policy does address one of the § 506 rights, then it is binding even if, for example, it sets forth "procedural rules concerning the termination hearing" that are nowhere to be found in the statutory language of § 506. *Id*. On the other hand, if the subject matter of the policy does not address a § 506 right because, for example, it "deals **exclusively** with notice of an investigation," then it can be disclaimed. *Id.* (emphasis added). Because the policies relied on by Ms. Kluth enforce the § 506 rights, they are binding on Spurlock.

---

[2] Notably, Spurlock does not appear to dispute that the policies cited in Ms. Kluth's motion address or enforce the § 506 rights.

It also does not matter that the Disciplinary Policy has a "broad scope" and includes other provisions that apply outside of the context of terminations. Resp. at 12. Those provisions—such as "Administrative Leave Pending Investigation Outcome"—are not at issue here, and Ms. Kluth does not contend that they form part of the implied contract of employment. There is no requirement that a particular sheriff's office policy document contain **only** policies that effectuate or enforce the § 506 rights. If a particular policy does not address a deputy's right to notice and opportunity to be heard, then it simply does not form part of the implied contract. *See Cummings I*, 440 P.3d at 1187 (noting that the sheriff's office policy manual forms an implied contract "[t]o the extent" it enforces the § 506 rights).

Ms. Kluth is therefore entitled to summary judgment on her implied contract claim.

## II. Spurlock's after-acquired evidence defense does not bar or preclude summary judgment on Ms. Kluth's breach of implied contract claim.

An employer's after-acquired evidence defense is ordinarily not a bar to liability, but instead limits a plaintiff's damages to the extent it is proven. *See McKennon v. Nashville Banner Publ'g*, 513 U.S. 352, 362 (1995). After *McKennon*, the Colorado Supreme Court carved out a narrow exception to this rule, holding that "resume fraud, even when discovered after termination, may serve as a defense to claims of wrongful discharge predicated on contract or equity." *Crawford Rehab. Servs. v. Weissman*, 938 P.2d 540, 548 (Colo. 1997).[3] Relying on *Crawford*, Spurlock contends (at 13-15) that alleged misstatements in Ms. Kluth's 1988 employment application provide a complete defense to Ms. Kluth's breach of implied contract claims in this case, precluding summary judgment on liability. But Spurlock is mistaken for two

---

[3] Because the Court explicitly limited its holding to "resume fraud," *Crawford* does not apply to "after-acquired evidence of post-hire misconduct," such as Spurlock's allegations that Ms. Kluth deleted records from her personnel file. 938 P.2d at 548 n.12.

10

reasons: First, *Crawford's* resume-fraud doctrine does not apply to the distinct type of implied contract claim at issue here, which is based on the public policy of the state as embodied in the statutory requirements of § 506. Second, even if the court were to apply the resume-fraud doctrine, Spurlock has not created a triable issue of fact sufficient to defeat summary judgment because it is undisputed that Spurlock never reviewed Ms. Kluth's 1988 employment application, and because the alleged misrepresentation is not material.

*Crawford's* resume-fraud doctrine does not apply to Ms. Kluth's implied contract claims because they are based in statute—and are thus distinct from the ordinary implied contract claims considered in *Crawford*, which are based on the contract principles of offer and acceptance. *Crawford* is premised on the contract-law "axiom" that "a party that has been fraudulently induced to enter into a contract may rescind the contract to restore the status quo." *Id.* at 547 (citing Restatement). The Court described its holding as "preventing an employee from using fraud to take advantage of the *Keenan* exception to employment at-will by allowing the employer to rescind its agreement to adhere to termination procedures contained in an employment manual." *Id.* at 547 n.11. But as explained in Ms. Kluth's motion (at 11-13), her implied contract claims do not rely on the *Keenan* exception to at-will employment, which is based on traditional contract principles of offer and acceptance. *See Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711-12 (Colo. 1987) (citing Restatement). Instead, Ms. Kluth's implied contract claims are based on the fact that "the at-will employment relationship" for sheriff's deputies was "modified somewhat" by § 506, such that certain policies are binding even in the absence of offer-and-acceptance—and even if expressly disclaimed by the sheriff. *Cummings I*, 440 P.3d at 1186.[4]

---

[4] The type of implied contract claims described by *Keenan* would apply, for example, to those sheriff's policies which do not effectuate the § 506 rights.

11

In addition, *Crawford* expressly reasoned that its departure from *McKennon* was justified because, " [the plaintiff's implied contract and promissory estoppel] claims relate to a private contract or promise between an employer and employee and do not raise **any** public-policy concerns, other than the general interest society has in the integrity of the employment relationship between employer and employee." 938 P.2d at 549 (emphasis added). By contrast, Ms. Kluth's implied contract claims are not a private contract at all—they are explicitly based in statute (§ 506) and do implicate significant public policy concerns, such that permitting a sheriff to waive or disclaim the contract would "contravene the public policy of this state." *Cummings I*, 440 P.3d at 1187. Although they are both nominally "implied contract" claims, implied contract claims based on statutory rights, like Ms. Kluth's claim, are an altogether different species of claim that the typical implied contract claim considered in *Crawford*. *Crawford's* resume-fraud rule therefore does not apply to Ms. Kluth's implied contract claim.

But even if the Court were to apply *Crawford's* resume-fraud rule, Spurlock does not have sufficient evidence to create a triable issue of fact—or defeat summary judgment—with respect to the alleged resume fraud. This is because "not every misrepresentation on an employment application will allow an employer to avoid liability"—only those that are "material" or "important" can. *Crawford*, 938 P.2d at 549. To begin with, it is undisputed that Spurlock never looked at Ms. Kluth's 1988 employment application materials until after she was terminated. (Response Concerning Disputed Facts ¶ 12.) Instead, when Spurlock was appointed sheriff, he selected Ms. Kluth to work for him as Undersheriff because he had worked alongside her for years and personally knew she was good at projects. (*Id.*) As such, Ms. Kluth's decades-old application materials could not, as a matter of law, have constituted "fraud" that was "material" to her employment with the DCSO over thirty years later. *Crawford*, 938 P.2d at 549.

12

Moreover, *Crawford* itself cautioned that employers should be "prevent[ed]" from "combing a discharged employee's record for evidence of any and all misrepresentations, no matter how minor or trivial, in an effort to avoid legal responsibility for an otherwise impermissible discharge." *Id.* (quotation omitted). The accusations of resume fraud levelled by Spurlock against Ms. Kluth are precisely such an effort to dig up trivialities and should not preclude summary judgment on Ms. Kluth's breach of implied contract claim. Indeed, the only applicable evidence of resume fraud here is Ms. Kluth's alleged mislabeling of a prior employer on her 1988 employment application as "Arapahoe County Sheriff's Department Community Corrections" rather than "Arapahoe Community Treatment Center." (Response Concerning Disputed Facts ¶ 12.) The information Ms. Kluth otherwise provided about this job was correct, including the job title, dates of employment, address, supervisor name, and contact information. (*Id.*) As for the alleged omission of a "domestic violence/felony menacing incident with her former husband," it cannot constitute resume fraud, because it is undisputed that the DCSO had the purportedly omitted information at the time it hired Ms. Kluth.[5] (*Id.*)

Spurlock's after-acquired evidence defense therefore does not preclude summary judgment on Ms. Kluth's breach of implied contract claim.

### III. The mitigation-defense exception argued by Spurlock does not apply, and he has failed to meet his burden to prove the availability of suitable positions.

In the Tenth Circuit, an employer is "required to satisfy **both** prongs" of its mitigation affirmative defense, including the first prong, that "(1) there were suitable positions which the claimants could have discovered and for which they were qualified." *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1474 (10th Cir. 1993) (emphasis in original). It

---

[5] The alleged record deletion is, even if proven, post-hire misconduct that is not relevant under *Crawford*. *See*, *supra*, note 3.

is undisputed that Spurlock has failed to present any evidence on this prong, and Ms. Kluth is therefore entitled to summary judgment in her favor on the affirmative defense.

Spurlock's attempts to avoid this clear-cut result are unavailing. To begin with, the Tenth Circuit has not adopted "the mitigation-defense exception" urged by Spurlock, under which a defendant is "relieved . . . of the burden to prove the availability of substantially equivalent jobs in the relevant geographic area once it has been shown that the former employee made **no effort** to secure suitable employment." *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 16 (1st Cir. 1999) (emphasis added); *compare id.*, *with Wilson v. Union Pac. R.R.*, 56 F.3d 1226, 1232 (10th Cir. 1995) ("general failure to seek employment for eighteen months before trial does not alone suffice to justify a mitigation instruction; the defendant must also show that appropriate jobs were available"). None of the authorities cited by Spurlock establish the mitigation-defense exception as the law in the Tenth Circuit or override the Tenth Circuit's binding holding in *Aguinaga*.[6] *See Carrasco v. Centura Health Corp.*, No. 19-cv-00357-LTB-KMT, 2021 U.S. Dist.

---

[6] In *Logan v. Pena*, the district court applied the same standard applicable to Spurlock's mitigation defense here, namely that the defendant bears the burden of establishing first "that there were suitable positions available which plaintiff could have discovered and for which he was qualified." No. 91-2389-JWL, 1993 U.S. Dist. LEXIS 2916, at *11 (D. Kan. Feb. 9, 1993) (citing *EEOC v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir. 1980)). The court noted that "[t]he defendant has satisfied the first component of its burden of proof by showing that there were suitable positions available in Kansas City which Mr. Logan could have discovered and for which he was qualified." Indeed, at trial the defendant had presented expert testimony establishing that "there were suitable positions available in the Kansas City area" for which the plaintiff was qualified. *Id.*, at *6.

Likewise the district court in *Hale v. Emporia State Univ.* did not actually apply the exception urged by Spurlock, and concluded that the employer "failed to carry its burden" on the mitigation defense, because "[i]t presented no evidence of suitable positions for which [plaintiff] could have applied." No. 16-4182-DDC-TJJ, 2020 U.S. Dist. LEXIS 154852, at *19 (D. Kan. Aug. 26, 2020). Citing *Logan* and *Quint* the court noted that the employer "could have discharged its burden had [plaintiff] made **no effort** to secure alternative employment," but determined that the exception would not apply because the plaintiff "made at least minimal effort to secure employment." *Id.*, at *20 (emphasis added).

LEXIS 205599, at *8-9 (D. Colo. June 18, 2021) ("I see no indication from the Tenth Circuit that it is inclined to adopt this 'emerging' trend and depart from its clear holding in *Aguinaga* that a defendant must establish **both** prongs of the two-part test.") (emphasis in original). As such, the Court should not consider the purported mitigation-defense exception urged by Spurlock.

Spurlock's mitigation-defense exception argument also fails on its own terms. Even where the exception has been recognized, it is only available "[i]n the relatively rare case where an employee has remained **completely idle** following her discharge" *Quint*, 172 F.3d at 16 (plaintiff did not "attempt to obtain a job during the forty-plus months following her discharge") (emphasis added). As such, "[r]egardless of whether the Tenth Circuit would apply this standard, [Spurlock] is not entitled to be relieved of [his] burden under the undisputed facts," because "[t]he exception only applies where a terminated employee makes **no effort** to secure work." *United States EEOC v. A.V.I. Sea Bar & Chophouse, LLC*, No. 2:21-cv-02428-HLT, 2022 U.S. Dist. LEXIS 229952, at *5 (D. Kan. Dec. 21, 2022) (emphasis added). Because it is undisputed that Ms. Kluth made "some effort, not no effort" to look for work, (SOADF ¶¶ 5-6), "it remains [Spurlock]'s burden to demonstrate that there were suitable positions available which [Ms. Kluth] could have discovered and for which [she] was qualified." *Id.* (granting summary judgment on the affirmative defense).

## CONCLUSION

The Court should grant Ms. Kluth's Motion for Partial Summary Judgment.

---

Finally, the Tenth Circuit's unpublished decision in *Sanchez v. Mora-San Miguel Elec. Coop., Inc.* does not address or analyze the elements of the mitigation defense as articulated in *Aguinaga. See, e.g., Pena-Flores v. Valley View Hosp. Ass'n*, No. 18-cv-00030-RBJ, 2020 U.S. Dist. LEXIS 5067, at *16 (D. Colo. Jan. 13, 2020) (refusing to "rely on *Sanchez* when there is a significant amount of binding Tenth Circuit precedent that requires [defendant] to provide evidence establishing that there were suitable, available positions which [plaintiff] could have discovered and for which she was qualified.")

Respectfully Submitted,

/s Felipe Bohnet-Gomez
Felipe Bohnet-Gomez
Matthew J. Cron
RATHOD | MOHAMEDBHAI LLC
2701 Lawrence St., Suite 100
Denver, CO 80205
(303) 578-4400
fbg@rmlawyers.com
mc@rmlawyers.com

*Attorneys for Plaintiff*