**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-3417-NYW-MEH

HOLLY KLUTH,

    Plaintiff,

v.

TONY SPURLOCK, individually, and
DARREN WEEKLY, in his official capacity as Douglas County Sheriff,

    Defendants.

---

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

---

Defendant Tony Spurlock in his individual capacity and Defendant Darren Weekly in his official capacity as Douglas County Sheriff[1], by and through their counsel, submit this Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (ECF No. 38, filed January 13, 2023) and state as follows:

**REPLY CONCERNING UNDISPUTED FACTS ("RCUF")**

3. Not a genuine dispute. It is undisputed that Plaintiff did not have an express contract for employment with the DSCO. (**MSJ Ex. A**, Kluth Dep. at 204:7-10).

4. Not a genuine dispute. The cited testimony does not support Plaintiff's assertion

---

[1] Sheriff Spurlock was the Douglas County Sheriff when the Motion for Summary Judgment was filed (ECF No. 30). His term as Sheriff has since expired and Darren Weekly is now the Douglas County Sheriff. To maintain consistency with the naming convention applied in the Motion for Summary Judgment, Spurlock is referred to herein as "Sheriff Spurlock."

that the entire policy manual "comprises" the mission, vision, and values. The deponent testified that the "entire policy manual is written in a manner to strive to meet [DCSO's] mission, vision, and values." (**Response Ex. 23**, Duffy Dep. at 241:3-4).

10. Not a genuine dispute. Plaintiff advised Mr. Moore that she was "ok with the back" of the document the two were preparing to facilitate Mr. Parker's request and proposed language for the "front" of the document, including her suggestion that Mr. Parker could "put a little * under the pictures and say from Douglas County Sheriff's website." (**MSJ Ex. E**, DCSO 42-43 – Plaintiff's text messages to Mr. Moore).

12. Not a genuine dispute. Plaintiff admitted that she "could have told Tim [Moore], 'Hey, don't reach out to the captains. Don't reach out to them, you know, while you're working[]' but that she did not do so, and not doing so "would be one inaction [she] probably could have done differently." (**MSJ Ex. A**, Kluth Dep. at 32:11-21).

13. Not a genuine dispute. Plaintiff knew that Mr. Moore was speaking to other members of command staff about providing quotes to Mr. Parker "while at least partially – or at times on duty." (**Ex. A-1**, Kluth Dep. at 73:6-13).

15. Not a genuine dispute. Plaintiff testified that the other action she took full responsibility for and would have done differently "would be to not mention the sheriff in [her] Facebook post, because [she] mentioned him *at the very beginning*." (**MSJ Ex. A**, Kluth Dep. at 32:11-33:5 (emphasis added); *see also* **MSJ Ex. F** – Facebook Post, which contains seven numbered points, including point "1)" that references "Sheriff Tony Spurlock" and point "2)" that follows with "With that said…").

17. Not a genuine dispute. The cited testimony does not support Plaintiff's assertion that Mr. Johnson purportedly not being asked to determine whether Plaintiff had violated policy was "aberrational." The deponent testified that the investigation "was an extraordinary circumstance" and an "abnormal situation; [because] it involved the second highest ranking person in the office…." (**Resp. Ex. 26**, Domenico Dep. at 84:23-85:5).

31. Not a genuine dispute. The cited testimony does not support Plaintiff's assertion or any suggestion that the Duffy memorandum was the sole basis for Sheriff Spurlock's knowledge of the incidents referenced therein. (**Ex. C-1**, Spurlock Dep. at 234:22-235:10). "[T]he Number 1 reason that [Sheriff Spurlock] terminated [Plaintiff] was because she no longer fulfilled the vision, mission, and values of [his] office, which involved very important, particular issues, like judgment, and trust, and unity." (**Ex. C-1**, Spurlock Dep. at 235:17-236:7).

   a. Sheriff Spurlock learned of Plaintiff's objections to and complaints about the on-call command structure prior to Plaintiff's termination. (**Ex. C-1**, Spurlock Dep. 240:24-241:3). Sheriff Spurlock viewed Plaintiff's conduct as problematic given Plaintiff's recent demotion from Undersheriff and demonstrated Plaintiff's inability to work with the whole department. (*Id*. at 240:10-18).

   b. Not a genuine dispute. Plaintiff's email on the issue speaks for itself. (*See* **MSJ Ex. R**, DCSO 2507-09 emails). Plaintiff accused her then-supervisor, Chief Duffy, of acting disrespectfully and violating the chain of command. (*See id*. at 2508, email to Duffy: "I have been respectful of chain of command up the chain to you, and would not consider violating that without first discussing any issues with you, *and I believe you should have the same respect for my*

3

*subordinates*. By going to them directly to give them information or gathering information in my opinion is a *violation of the policy*." (emphasis added)).

Plaintiff was insubordinate to Chief Duffy. (**MSJ Ex. P** – DCSO 952 – Duffy entry to Plaintiff's Guardian Tracker file: "her allegation was unfounded and would not be tolerated this insubordination in the future"; *see also* **Ex. C-1**, Spurlock Dep. at 246:4-9). Insubordination is an "incredibly serious violation." (**Ex. C-1,** Spurlock Dep. at 247:1-8). Sheriff Spurlock was aware of the incident prior to Plaintiff's termination. (**Ex. C-1**, Spurlock Dep. at 248:24-249:4).

c. The cited portion of Sheriff Spurlock's testimony in Plaintiff's Response does not address the "essential employee" issue addressed in the MSOMF of the Motion.

d. Chief Duffy recalls the issue of Plaintiff's Tweets/Twitter war with Captain Jensen being addressed in an executive offers' meeting in which he was directed to speak to Plaintiff and Jensen and advise them to stop their behavior. Chief Duffy subsequently spoke to both Plaintiff and Jensen and told them to stop their behavior. (**Ex. Q-1,** Duffy Dep. 198:9-199:7).

e. Plaintiff and Captain Jensen were in conflict from almost the beginning of their joint tenure as co-captains in Patrol. Chief Duffy apprised Undersheriff Walcher about this ongoing conflict. (**Ex. Q-1**, Duffy Dep. 67:4-68:10). One of the sources of conflict between Plaintiff and Jensen was the DCSO pursuit policy. (**Ex. Q-1**, Duffy Dep. 148:16-149:25).

f. Plaintiff failed to fully comply with Chief Duffy's instructions about reviewing and approving deputy pursuits. (**Ex. Q-1**, Duffy Dep. 153:2-21).

g. Plaintiff's citations to the record do not support this Paragraph. Plaintiff consistently demonstrated divisive behavior, lack of leadership and poor professional judgment after her demotion from Undersheriff to Captain. *See* RCUF, ¶ 31 a. - f.).

4

## RESPONSE CONCERNING DISPUTED FACTS ("RCDF")[2]

1. Admitted that Sheriff Spurlock discussed with Plaintiff his intention to endorse a Democratic candidate for Douglas County Commissioner, Lisa Neal-Graves, and that Sheriff Spurlock was aware of Plaintiff's intention to run for Sheriff at that time. Denied that Sheriff Spurlock and Plaintiff "discussed her need to distance herself from the endorsement." (**Resp. Ex. 22**, Spurlock Dep. 149:9-16).

2. Admitted. (*See* citations to paragraph 2 of the "Statement of Additional Disputed Facts" ("SADF"[3]) of Plaintiff's Response).

3. Admitted that Plaintiff's Facebook post speaks for itself.

4. Admitted.

5. Denied. The DCSO did not sustain policy violations against Plaintiff "because of her Facebook post." (*See* MSJ, SOMF, ¶¶ 20-29).

6. Admitted that Kevin Duffy was promoted to Law Enforcement Bureau Chief after Plaintiff's demotion. Denied that Chief Duffy publicly supported Lisa Neal-Graves and/or that Chief Duffy's wife's endorsement of Ms. Neal-Graves contributed to Chief Duffy's promotion. (**Ex. Q-1**, Duffy Dep. 234:16-235:10).

7 - 9. Admitted.

---

[2] Any admission of facts as asserted under this section are only for purposes of briefing on Defendant[s'] Motion for Summary Judgment.

[3] The Court's Civil Practice Standards require a party opposing summary judgment to set forth in a separate section each material fact, which must be "separately numbered and paragraphed." Civ. Practice Standard 7.1D(b)(5). Plaintiff's attempt to incorporate by general reference multiple pages of an entirely separate motion is improper and should be rejected. To the extent the Court finds it is not improper and/or permits Plaintiff to do so, Defendants incorporate by reference each of their respective responses to such "material facts" as provided in Defendant's Response to Plaintiff's Motion for Partial Summary Judgment (ECF No. 35).

10.     Denied. Whether such issues are so documented is "up to the individual supervisor" who could choose to keep their own file of performance issues. (**Ex. W**, Domenico Dep. at 28:19-25; **Ex. C-1**, Spurlock Dep. at 40:9-16).

11-14.  Admitted.

15.     Denied. Plaintiff's citation to deposition testimony does not support this Paragraph.

16.     Denied. Plaintiff's contention that Sheriff Spurlock did so "was just kind of [her] impression when [she] got transferred to the jail" and was only her assumption, for which she does not have any supporting evidence. (*See* **Resp. Ex. 25**, Kluth Dep. at 258:6-12).

17.     Admitted.

18.     Denied. During the period that Plaintiff was reporting to Mr. Johnson, Plaintiff got "snippy" with Mr. Johnson about his workday and work hour expectations, "stomped out" of his office and otherwise "acted very unprofessional." (**Ex. X**, Johnson Dep. at 139:3-140:5, 178:4-9).

19.     Denied. Plaintiff's citation to deposition testimony does not support this Paragraph.

20 - 21. Admitted.

22.     Denied. Sheriff Spurlock consulted with the County Attorney and HR Director. (**Resp. Ex. 22**, Spurlock Dep. 204:24-205:1).

23.     Denied. Chief Duffy apprised Undersheriff Walcher and Sheriff Spurlock regarding certain issues concerning Plaintiff. (**Ex. Q-1,** Duffy Dep. at 142:8-143:4, 143:10-23, 123:9-127:3).

24.     Denied. Mr. Johnson did not testify that he believed that Plaintiff was meeting the mission, vision and values of the DCSO during the time that he supervised her. (**Resp. Ex**. **32**, Johnson Dep. at 177:25-178:11).

25.     Denied. Plaintiff's citation to the Declaration does not support this Paragraph.

26. Denied. Sheriff Spurlock's statement also related to Plaintiff's behavior and trust issues. *See* MSJ, SOMF, ¶ 33.

27. Admitted that Sheriff Spurlock endorsed Sheriff Weekly in November of 2021.

28. Admitted.

29. Admitted that Mr. Moore's termination did not directly follow the procedures of the Disciplinary Policy.

30 – 31. Admitted.

32. Admitted that Sheriff Spurlock's response to interrogatory no. 2 speaks for itself.

33. Denied. Sheriff Spurlock's response to interrogatory no. 2. was not based solely on Chief Duffy's memorandum. Sheriff Spurlock testified the number one reason that he terminated Plaintiff was because "she no longer fulfilled the vision, mission and values of my office which involved very important, particular issues, like judgment, and trust and unity." (**Ex. C-1**, Spurlock Dep. at 235:17-236:2).

34. Admitted that Chief Duffy reviewed his notes and communications with Plaintiff and prepared the document as a "synopsis." (**Resp. Ex. 23**, Duffy Dep. at 170:1-13).

35. Denied. Plaintiff's citation to Chief Duffy's deposition testimony does not support this Paragraph in its entirety.

36. Admitted that Sheriff Spurlock did not know of the Plaintiff/Lieutenant Bronner incident prior to Plaintiff's termination. Denied that Sheriff Spurlock did not know of the other incidents. (**Resp. Ex. 22**, Spurlock Dep. at 255:15-258:7).

37. Admitted that Sheriff Spurlock's response to interrogatory no. 2 speaks for itself.

7

38. Admitted that Chief Duffy testified to same at his deposition and further testified that Plaintiff's actions caused some consternation with Captain Jensen and the captain of the training unit. (**Ex. Q-1**, Duffy Dep. 205:1-9).

39. Admitted that Sheriff Spurlock's response to interrogatory no. 2 speaks for itself.

40. Admitted that Mr. Johnson testified that he did not recall Plaintiff interfering with a transfer.

41. Admitted that Sheriff Spurlock's response to interrogatory no. 2 speaks for itself.

42. Denied. Plaintiff's citation to Chief Duffy's deposition testimony and Undersheriff Walcher's deposition testimony does not support this Paragraph

43. Admitted that Sheriff Spurlock's response to interrogatory no. 2 and deposition testimony speaks for themselves.

44. Admitted that Chief Duffy testified to same at his deposition.

45. Admitted that Sheriff Spurlock's response to interrogatory no. 2 speaks for itself.

46. Denied. Plaintiff's citation to deposition testimony does not support this Paragraph.

## ARGUMENT

### I. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM[4]

Plaintiff contends that her free speech claim is premised on three instances of allegedly protected speech: (1) her "September 2020 speech responding to Spurlock's political endorsement," (2) her September 2020 Facebook post, and (3) her "speech relating to her February 2021 campaign for sheriff." (Resp. at 14). Plaintiff concedes, however, that her demotion from

---

[4] Plaintiff concedes her Fourteenth Amendment Procedural Due Process claim. (Response at 2).

Undersheriff to Captain of Patrol in the fall of 2020 was *not* in retaliation for any protected speech or affiliation. (*See* Resp. at 23: "Again, Ms. Kluth's claims challenge her unlawful termination—not her demotion."). Of course, she was demoted for violating multiple DCSO policies (which she unequivocally admitted to and took "full responsibility" for), not in retaliation for engaging in any protected speech.

Plaintiff now attempts to ignore her admission of multiple policy violations and instead focus simply on the fact that the general subject matter of the issues giving rise to her misconduct was "political" in nature. That does not save her claim. None of Plaintiff's alleged "political" speech in 2020 was a substantial or motivating factor in Plaintiff's termination approximately *eight months later*. Plaintiff's reliance on *Lochkeed Martin Corp*. for the proposition that "the relevant time frame" for evaluation of temporal proximity is "not when the discharge occurred" is misplaced. (*See* Resp. at 15, citing 717 F.3d 1121, 1137 (10th Cir. 2013)). The part of the statement that Plaintiff omitted reveals that this rule is applicable only under a "contributing factor" causation standard, which is far less demanding on a plaintiff than the "substantial motivating factor" at issue under *Garcetti/Pickering*. *See Lockheed*, 717 F.3d at 1137 ("when evaluating temporal proximity *for purposes of determining whether Brown's protected activity was a <u>contributing factor</u>* in her constructive discharge…")(whistleblower action under Sarbanes-Oxley Act) (emphasis added); *id*. at 1136 (explaining that the "contributing factor" standard is "broad and forgiving" and is only applied to certain statutory whistleblower actions because it was "intended to overrule existing case law, which requires a whistleblower to prove that [their] conduct was a … motivating, [or] substantial factor….").

9

There is no evidence that the investigation into the September 2020 issue was pre-textual or retaliatory. Plaintiff admits that her actions created the appearance of a rift between the Sheriff and her (the undersheriff; his second-in-command; and a relationship for which personal loyalty and a close working relationship is required). She also took "full responsibility" for her actions (and inactions) in the incident, including "calling out" the Sheriff in her Facebook post. (**Ex. A-1**, Kluth Dep. at 278:15-279:1). Under these circumstances, no reasonable jury could find that her allegedly protected "political" speech during this incident was a substantial or motivating factor in her termination roughly eight months later. Plaintiff's attempts to fault Sheriff Spurlock for having the incident investigated is baseless because the investigation itself was also not an adverse employment action. *Cf. Lincoln v. Maketa*, 880 F.3d 533, 543 (10th Cir. 2018) ("We generally do not consider standard workplace investigations to be adverse employment actions.").

Likewise, there is no evidence that Plaintiff's "speech relating to her February 2021 campaign for sheriff" (Resp. at 14) was a substantial or motivating factor in her termination roughly *three months later* on May 25, 2021. *See Lauck v. Campbell Cty.*, 627 F.3d 805, 815-16 (10th Cir. 2010)("We have repeatedly held that one cannot infer causation from temporal proximity alone when the time lapse between the protected activity and the retaliatory act exceeds three months."). Moreover, Sheriff Spurlock was aware of Plaintiff's intent to run for Douglas County Sheriff well before May 2021, further weakening any causal link between Plaintiff's termination and her campaign. (**Ex. C-1**, Spurlock Dep. at 146:9-147:4, 149:12-16). When Plaintiff told him of her intent to do so sometime in the summer of 2020, Spurlock's reaction "wasn't negative." (**Ex. A-1**, Kluth Dep. at 103:23-105:15).

10

Plaintiff's argument that her alleged "political" speech or affiliation with the Republican Party was a substantial or motivating factor in her termination is groundless. No reasonable jury could find that Plaintiff's affiliation with the Republican Party was a substantial or motivating factor in her termination when Sheriff Spurlock himself is a registered Republican and publicly endorsed another Republican, Sheriff Weekly, for Douglas County Sheriff. (**MSJ Ex. C**, Spurlock Dep. at 57:2-8; **Ex. C-1**, Spurlock Dep. at 269:21-270:2). Indeed, Plaintiff's contention is based simply on her "feeling" and "assumption." (**MSJ Ex. A**, Kluth Dep. at 143:12-23).

Plaintiff's argument that a reasonably jury could infer "political motivation" based on Sheriff Spurlock's statement that "nothing ha[d] changed since the fall" is also unavailing. The only credible evidence on this matter comes from Sheriff Spurlock, who explained that the comment referred to Plaintiff's behavior since her demotion—that "[s]he continued to not live up to the vision, mission, and values" of DCSO. (**Ex. C-1**, Spurlock Dep. at 213:16-214:17, 215:18-216:3, 216:12-217:3). Of course, "last fall" was when Plaintiff acted (self-admittedly) in a manner that could be perceived as "contrary to the sheriff" and a "split" in the command staff (MSOMF ¶ 18); and "betray[ed] [Sheriff Spurlock's] trust." (MSOMF ¶ 26). Plaintiff's contention that Sheriff Spurlock was referencing her political affiliation or "relationship with the Republican Party" is merely an assumption without any supporting evidence and is not sufficient to create a *genuine* issue of fact. (**Ex. A-1**, Kluth Dep. at 170:19-22). No reasonable jury could conclude that Plaintiff's alleged "political" speech or affiliation was a substantial or motivating factor in her termination decision.

Plaintiff's argument that Sheriff Spurlock's termination decision was pre-textual also misses the mark. Sheriff Spurlock terminated Plaintiff's employment with DCSO because she

11

failed to meet the vision, mission, and values of the office. Although, upon the advice of counsel, he did not further elaborate on this basis at the termination meeting (**Ex. C-1**, Spurlock Dep. at 210:24-25), Plaintiff was familiar with the DSCO vision, mission, and values and had agreed to uphold them for many years as Undersheriff. (*See* **Ex. A-1**, Kluth Dep. at 211:6-14). Further, Sheriff Spurlock was aware of various incidents involving Plaintiff that contributed to his determination that Plaintiff was not meeting his vision, mission, and values. (*See, e.g.*, MSOMF 31(b); *see also* **Ex. C-1**, Spurlock Dep. at 246:4-9, 247:1-8, 248:24-249:4).

That no PCR or internal affairs investigation immediately preceded Plaintiff's termination is not credible evidence of pretext. Employment with the Sheriff's Office is "at will." (*See* **MSJ Ex. S**, KLUTH 14-15 – DCSO's General Administration Manuals and Authority § I and C.R.S. § 30-10-504). Under the DCSO policy and certain circumstances, the Sheriff can terminate an employee without going through the PCR, IA, or disciplinary process. (*See* **Ex. Y**, Walcher Dep. at 118:1-24 (*e.g.*, a "seri[es] of pattern of poor behavior and judgment")).

Plaintiff has presented no evidence that her lateral transfer as Captain from the patrol division to the detentions division was an adverse employment action. *Cf. Lincoln v. Maketa*, 880 F.3d 533, 539 (10th Cir. 2018)(the fourth *Garcetti* step "requires that the employer take some adverse employment action against the employee."). Plaintiff's sole argument regarding her dissatisfaction with the transfer to Captain of Detentions is that it is a "less public-facing position" than Captain of Patrol. Even assuming that to be true for purposes of summary judgment, it was not an alteration of employment status that would constitute an adverse employment action. There was no change in her salary, position, or benefits. (**Ex. Z**, DCSO 1880 – Personnel Action Form with transfer information). *See Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) ("we still

will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action" and "the fact that the employee views the transfer either positively or negatively does not of itself render the … transfer an adverse employment action"). Plaintiff's transfer was not punitive; she was transferred to the same position in a different division, which was DCSO's largest division and had a large budget. (**Ex. C-1**, Spurlock Dep. at 266:13-17; **Ex. Y**, Walcher Dep. at 244:2-13 ("A captain's a captain's a captain."); **Ex. Q-1**, Duffy Dep. at 65:10-11 (testifying that the Detentions division was "another critical division within the department").

Neither has Plaintiff presented any evidence that the transfer to the detentions division was in retaliation for any protected speech or affiliation. Plaintiff's contention that Sheriff Spurlock intentionally transferred her to a less public-facing role "was just kind of [her] impression when [she] got transferred to the jail" and was only her assumption, for which she does not have any supporting evidence. (*See* **Resp. Ex. 25**, Kluth Dep. at 258:6-12). Her transfer was strictly a decision based on organizational movement and structure, not retaliation. (*See* **Ex. C-1**, Spurlock Dep. at 265:25-266:12; *see also* **Ex. Q-1**, Duffy Dep. at 64:20-65:15, 66:5-13 (testifying in 30(b)(6) capacity).

## II.   SHERIFF SPURLOCK IS ENTITLED TO QUALIFIED IMMUNITY

Plaintiff has failed to show that Sheriff Spurlock violated clearly established law. The Supreme Court has repeatedly admonished courts "not to define clearly established law at a high level of generality" because "doing so avoids the crucial question [of] whether the official acted reasonably *in the particular circumstances that he or she faced*." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (emphasis added); *White v. Pauly*, 580 U.S. 73, 137 (2017); *Mullenix*, 577 U.S. at 12.

First Amendment retaliation claims are not exempted from this rule. *See, e.g.*, *Lane v. Franks*, 573 U.S. 228, 245 (2014) (considering particularized facts such as whether speech was testimony under oath and outside the scope of job duties) and *Lincoln v. Maketa*, 880 F.3d 533, 543-44 (10th Cir. 2018) (reversing denial of qualified immunity in First Amendment retaliation case where district court relied on general principles). Further, courts analyze qualified immunity at each step of the *Garcetti/Pickering* test. *See, e.g., Singh*, 936 F.3d at 1034-35 (granting qualified immunity "at the second step of *Garcetti/Pickering*"); *see also Lincoln*, 880 F.3d at 538 (reversing denial of qualified immunity because plaintiffs failed to show clearly established law for different elements).

None of the cases cited by Plaintiff show that a reasonable Sheriff under the circumstances of this case, would know, "beyond debate," that terminating a Captain for failing to meet the Sheriff's vision, mission, and values (despite having served for many years as his Undersheriff and enforcing those same values) would violate the First Amendment simply because the employee engaged in alleged "political" speech and expression of affiliation approximately eight months before; or because she announced her candidacy for Sheriff (in a race where the defendant was not running) roughly three months before.

Plaintiff's political association/patronage cases do not show clearly established law under these circumstances because even taking the undisputed facts in light most favorable to Plaintiff, there is no evidence that Plaintiff's September 2020 speech or affiliation with the Republican Party was a substantial or motivating factor in her termination. For example, Plaintiff argues that her right "not to be terminated for her political association or affiliation" was clearly established by *Gann v. Cline*, 519 F.3d 1090 (10th Cir. 2008) and unspecified "others." (Resp. at 15, n.5). *Gann*

14

is inapposite. There, a County Commissioner fired an office manager because she had failed to support the Commissioner's campaign for the position. *Id*. at 1092. Moreover, the generalized principle relied upon by Plaintiff does not suffice to show clearly established law under the particularized facts of this case.[5]

### III. PLAINTIFF'S CLAIM BASED ON C.R.S. § 13-21-131 FAILS

Plaintiff's Section 13-21-131 claim is based on the same allegations and arguments as her First Amendment retaliation claim.[6] Although she argues that this statute provides broader protection than the First Amendment, she fails to explain how the analysis is any different. The single case she cites is wholly inapposite and concerns a challenge to an ordinance regarding location of adult businesses. She also fails to provide any legal authority to support her assertion that "it is not appropriate" to apply the second and third *Garcetti* prongs in the analysis. Because Defendants are entitled to summary judgment on the First Amendment claim, the Court should enter judgment in their favor on this claim, too.

### IV. PLAINTIFF'S BREACH OF IMPLIED CONTACT CLAIM FAILS

To the extent Plaintiff attempts to incorporate by reference her briefing on the issue from her Motion for Partial Summary Judgment and Reply in support thereof, Defendants incorporate by reference their arguments in their Response to Plaintiff's Motion. (ECF No. 35). Defendants also rely on the arguments addressed in their Motion for Summary Judgment, which Plaintiff

---

[5] Sheriff Weekly is entitled to summary judgment on Plaintiff's *Monell* claim because "[a] municipality may not be held liable where there is no underlying constitutional violation by any of its officers." *Graves v. Thomas*, 450 F.3d 1215, 1225 (10th Cir. 2006).

[6] Plaintiff concedes her statutory claim based on a due process theory. (Resp. at 25, n. 10).

15

appears to concede to the extent they are unaddressed in her Response or her Motion for Partial Summary Judgment briefing.

## V. THERE IS NO BASIS FOR PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES

Punitive damages are inappropriate where a plaintiff cannot show that the defendant either acted with malice or knew his actions were unconstitutional. *Jolivet*, 966 F.2d at 577. Even considering the facts in light most favorable to Plaintiff, there is no evidence that Sheriff Spurlock acted with malice or evil motive, or that he *knew* his actions were unconstitutional (which they were not).

## CONCLUSION

For the reasons described above and in Defendants' Motion, Plaintiff has failed to establish any triable issues of fact. Accordingly, this Court should enter summary judgment in favor of the Defendants and dismiss all of Plaintiff's claims against them with prejudice.

Dated this 10th day of February 2023.

    *s/ William T. O'Connell, III*
William T. O'Connell, III
Saugat K. Thapa
WELLS, ANDERSON & RACE, LLC
1700 Broadway, Suite 900
Denver, CO 80290
Telephone: 303-830-1212
Email: woconnell@warllc.com; sthapa@warllc.com

**ATTORNEYS FOR DEFENDANTS
TONY SPURLOCK & DARREN WEEKLY**

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2023, a true and correct copy of the above and foregoing **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of Court using the CM/ECF system and/or sent via e-mail to the following e-mail addresses:

Felipe Bohnet-Gomez, Esq.
Matthew J. Cron, Esq.
Siddhartha H. Rathod, Esq.
**RATHOD MOHAMEDBHAI LLC**
2701 Lawrence Street, Suite 100
Denver, CO 80205
*fbg@rmlawyers.com*
*mc@rmlawyers.com*
*sr@rmlawyers.com*

Attorneys for Plaintiff

*s/ Barbara McCall*
Barbara McCall, Legal Assistant