*AB Litigation Services*

```
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-CV-3417-NYW
_____

DEPOSITION OF HOLLY NICHOLSON-KLUTH
July 7, 2022
_____

HOLLY KLUTH,

Plaintiff,

vs.

TONY SPURLOCK, Individually and in
his official capacity as Douglas County
Sheriff,

Defendant.
_____


APPEARANCES:

     RATHOD|MOHAMEDBHAI, LLC
          By Matthew J. Cron, Esq.
              2701 Lawrence Street Suite 100
              Denver, Colorado  80205
                Appearing on behalf of Plaintiff

     WELLS, ANDERSON & RACE, LLC
          By William T. O'Connell, III, Esq.
              1700 Broadway, Suite 1020
              Denver, Colorado  80290
                Appearing on behalf of Defendant

Also Present: Tony Spurlock
```

SPURLOCK Reply in Support of Motion for Summary Judgment, Exhibit A-1

AB Litigation Services

```
 1         Q     Well, what about the portion of the
 2   clause that states "violations of Office Policy
 3   and Procedures"?
 4         A     At the time, I didn't feel that there
 5   was an office policy and procedure violation.
 6         Q     Despite the fact that you knew he was
 7   speaking to other members of command staff about
 8   providing quotes to Parker?
 9         A     In their personal capacity.
10         Q     But you knew that Moore was doing that
11   while at least partially -- or at times on duty,
12   right?
13         A     Yes.
14         Q     Okay.  But you don't believe that that
15   is an occasion of Moore demonstrating laxity in
16   the performance of his duty or that such conduct
17   violated office policies and procedures?
18         A     No.
19         Q     Sitting here today, almost two years
20   later, do you believe that Moore seeking or
21   inquiring about other command staff members
22   providing these statements is, in fact, violating
23   office policy and procedure?
24         A     Not from a personal perspective.
25   There --  And he also told me that he took
```

SPURLOCK Reply in Support of Motion for Summary Judgment, Exhibit A-1

AB Litigation Services

1   demoted or not.  I just know the timing of it.

2        Q      Okay.  So you don't have any evidence

3   that there's any type of causal connection?

4        A      I don't have any evidence.

5        Q      When you were assigned to captain of --

6   Well, strike that.

7               Who was in the position of captain of

8   detentions immediately prior to you assuming that

9   position?

10       A      Tim Moore.

11       Q      When you were moved -- or assigned

12  captain of detentions, where was Moore moved or

13  assigned to?

14       A      To the Foundation training Academy, the

15  Foundation building.

16       Q      Okay.  The training academy, is that

17  otherwise known as Highlands Ranch Law Enforcement

18  Training Academy?

19       A      Yes.

20       Q      Was that a new captain's position at

21  the training academy?

22       A      Yes.

23       Q      Now, I believe you've referenced here a

24  couple times this morning that you and Sheriff

25  Spurlock had some conversations about you having

SPURLOCK Reply in Support of Motion for Summary Judgment, Exhibit A-1

AB Litigation Services

```
 1   to make a statement, as you refer to it in the
 2   complaint, about distancing yourself from his
 3   endorsement of Lisa Neal-Graves.
 4           Is that accurate?
 5      A    Yeah.
 6      Q    How many conversations did you have
 7   with the sheriff about that?
 8      A    Maybe one or two.
 9      Q    When was the first, if you recall?
10      A    I don't recall.
11      Q    Were there any witnesses to that
12   conversation other than the two of you?
13      A    I don't think so.
14      Q    Where did that conversation take place?
15      A    I believe one of them was in his
16   office, but I don't have a lot of recollection of
17   it.  I just remember us discussing it.
18      Q    What specifically do you recall the
19   sheriff stating?
20      A    What I told him?
21      Q    Well, yeah.  Let's just --  Let's take
22   it from the top, then.  What you told him.  What
23   he told you.  Let's start with what you told him.
24      A    Over the month or two before he made
25   it --  Sometime during the summer, maybe up until
```

*AB Litigation Services*

```
1    the time he made the endorsement, he told me a
2    couple times that he was thinking about doing it.
3    And I just remember saying, "You know I can't have
4    anything to do with that.  I'm thinking about
5    running for sheriff," or something along those
6    lines.  I --  And I don't really recall the words,
7    but something to the effect of "I would have to
8    make a statement personally that I didn't agree
9    with that."
10         Q     Okay.  What was the sheriff's reaction?
11         A     I felt like he understood.
12         Q     Well, how did you arrive at that
13   feeling?
14         A     I don't remember his words, but it
15   wasn't negative.
16         Q     Okay.  Well, was it positive?
17         A     It was --  It --  To me --  From what I
18   recollect, it was more of just, "Yeah, right.  I
19   understand," or something to that effect.
20         Q     Did he actually say that?
21         A     I don't remember the words.
22         Q     Okay.  Did you memorialize that
23   conversation at any time?
24         A     No.
25         Q     Now, that conversation or those
```

SPURLOCK Reply in Support of Motion for Summary Judgment, Exhibit A-1

*AB Litigation Services*

```
 1        Q     As you sit here now, 14 months later,
 2   do you know what he meant?
 3        A     No.
 4        Q     According --  You also referenced this
 5   in your testimony, but according to your
 6   complaint, Sheriff Spurlock, during that meeting,
 7   stated to you that "Nothing had changed since last
 8   fall."
 9              Is that accurate?
10        A     Yes.
11        Q     Do you know what he was referring to?
12        A     The only thing I could assume was my
13   relationship with the Republican Party.
14        Q     Why did you assume that's what he meant
15   with that statement?
16        A     Because that's what was going on during
17   last fall, was my relationship with the Republican
18   Party.
19        Q     Do you have --  Are you aware of any
20   evidence to support that belief, other than what
21   you've just testified to?
22        A     No.
23        Q     Okay.  In your complaint at
24   Paragraphs 111 through 113, there are allegations
25   related to Captain Weekly's campaign candidacy for
```

```
 1       A    I think personal loyalty.  I don't
 2  ever --  I didn't feel that anything we did was --
 3  or that I did was in direct disloyalty to him when
 4  I did it, and I didn't realize that he would be so
 5  upset about it or feel that way about it.
 6       Q    As Sheriff Spurlock's undersheriff, did
 7  you owe him a duty of loyalty?
 8       A    I guess that's kind of a complicated
 9  question.  I felt like he needed to be able to
10  rely on me to carry out his duties and his desires
11  and his mission, vision and values.  How I felt
12  about him personally were my own feelings, but I
13  would be -- or I wouldn't want someone to think
14  that I was disloyal to him.
15       Q    So as -- as the Douglas County sheriff,
16  I don't mean as the man Tony -- or as the
17  individual Tony Spurlock --
18       A    Yeah.
19       Q    -- but as Sheriff Tony Spurlock, did
20  you owe him a duty of loyalty as his undersheriff?
21       A    I believe so, yeah.
22       Q    Okay.  Do you believe what you did, as
23  far as texting the quote to Parker, posting the
24  statement on Facebook, speaking to Moore about
25  statements for the Douglas County GOP, did -- do
```

AB Litigation Services

```
 1   was able to see people and so forth; that maybe he
 2   wanted to bury me in the jail where I really
 3   didn't have those outside meetings with cities and
 4   towns and other quasi-government agencies; that I
 5   was uncovering things that hadn't been done.
 6              So that was just kind of my impression
 7   when I got transferred to the jail.
 8        Q    That's what your assumption was?
 9        A    Yes.
10        Q    Did you ever acquire any independent
11   evidence to support that assumption?
12        A    No.
13        Q    On Kluth -1445, you identify a Bob
14   Sexton.  Who's Bob Sexton?
15        A    He's a district captain, I believe, in
16   Castle Pines.
17        Q    -1447 through -1471 are text between
18   you and Kevin Duffy, according to the disclosure
19   that accompanied these.  Take a look very quickly
20   at Kluth -1455.
21              MR. CRON:  Did you say -55?
22              MR. O'CONNELL:  Yes
23        Q    (By Mr. O'Connell)  Now, your texts are
24   on the right-hand side, correct?
25        A    I think so, yeah.
```

AB Litigation Services

```
 1   something to the effect that it looked -- made
 2   people think that we weren't on the same page.
 3              And I don't remember the other words he
 4   used but whatever he said made me feel bad that I
 5   had upset him and that I had done something that
 6   he wasn't happy with.
 7       Q    And my point at this hour of the day
 8   is --  And I'm not trying to retread over old
 9   ground, certainly, so if I asked you this before,
10   then I apologize.  As you sit here today, roughly
11   14 months after your termination and almost two
12   years after your demotion, can you understand why
13   he was upset if he was, in fact, upset?
14       A    I think so, yeah.
15       Q    Okay.  Do you bear any responsibility
16   for the -- for why you were demoted from
17   undersheriff to co-captain?
18       A    On my Facebook post, I felt like I
19   probably shouldn't have mentioned him, so maybe
20   it would have been better had I just said,
21   "Hey, here's" -- "here's what I feel.  I support
22   conservative candidates" without calling him
23   out --
24       Q    Uh-huh.
25       A    -- even though I didn't say anything
```

Holly Nicholson-Kluth  - 07/07/2022                    278

SPURLOCK Reply in Support of Motion for Summary Judgment, Exhibit A-1

1  bad about him.

2  In my discussions with Tim, I didn't
3  think it was a problem at the time.  The fact that
4  he believes it was a problem and there were policy
5  violations and it was being disloyal to him makes
6  me now wish I hadn't done it.  But at the time, I
7  didn't think there was a problem with it.  I felt
8  like he understood that we -- that we could make a
9  statement and that we needed to make a statement.
10 Obviously, I hadn't approved any statement or
11 approved any social media post, but they were
12 talking about it.

13 When he first told me that he wasn't
14 going to do an official investigation, there would
15 be no Garrity, that they were just going to -- he
16 was just going to get all the detail, to me it
17 was, like, "Okay.  That makes sense."  And then it
18 changed suddenly to a full investigation and
19 calling someone in from the outside, so I really
20 didn't know how it came -- how it went from one
21 thing to another, what made him madder or made him
22 want to take it more formal.

23     Q    So with respect to your actions and
24 inactions that led to your demotion from
25 undersheriff to co-captain in patrol, is there --

AB Litigation Services

```
 1    STATE OF COLORADO)
 2                    )ss.    REPORTER'S CERTIFICATE
 3    COUNTY OF DENVER )
 4           I, Tracy L. Harris, do hereby certify that I
 5    am a Certified Realtime Reporter, Registered Merit
 6    Reporter, within the State of Colorado; that
 7    previous to the commencement of the examination,
 8    the deponent was duly sworn to testify to the
 9    truth.
10           I further certify that this deposition was
11    taken in shorthand by me at the time and place
12    herein set forth, that it was thereafter reduced
13    to typewritten form, and that the foregoing
14    constitutes a true and correct transcript.
15           I further certify that I am not related to,
16    employed by, nor of counsel for any of the parties
17    or attorneys herein, nor otherwise interested in
18    the result of the within action.
19           In witness whereof, I have affixed my
20    signature this 18th day of July, 2022.
21
22
23
                         _____
24                       Tracy L. Harris, CRR, RMR, RPR
                         216 - 16th Street, Suite 600
25                       Denver, Colorado 80202
```

SPURLOCK Reply in Support of Motion for Summary Judgment, Exhibit A-1